[869 NE2d 18, 838 NYS2d 18]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v COR-
NELL LOUREE, Appellant.

Argued April 24, 2007; decided June 5, 2007

## POINTS OF COUNSEL

*Appellate Advocates,* New York City (*Lynn W.L. Fahey* of counsel), for appellant. The court's failure to inform appellant that the determinate sentence he faced would be followed by postrelease supervision rendered his guilty plea less than knowing, intelligent, and voluntary and requires reversal without the need to seek plea withdrawal first in the trial court. (*People v Catu,* 4 NY3d 242; *People v Seaberg,* 74 NY2d 1; *People v Nixon,* 21 NY2d 338; *North Carolina v Alford,* 400 US 25; *People v Francabandera,* 33 NY2d 429; *Kercheval v United States,* 274 US 220; *People v Van Deusen,* 7 NY3d 744; *People v Lopez,* 71 NY2d 662; *People v Francis,* 38 NY2d 150; *People v Marincic,* 2 NY2d 181.)

*Charles J. Hynes, District Attorney,* Brooklyn (*Solomon Neubort* and *Leonard Joblove* of counsel), for respondent. The order of the Appellate Division should be affirmed because defendant's claim that his guilty plea was not entered knowingly and voluntarily is unpreserved for appellate review. (*People v Patterson,* 39 NY2d 288, 432 US 197; *People v Kelly,* 5 NY3d 116; *People v Antommarchi,* 80 NY2d 247; *People v Ahmed,* 66 NY2d 307; *People v Michael,* 48 NY2d 1; *People ex rel. Battista v Christian,* 249 NY 314; *Cancemi v People,* 18 NY 128; *People v McLucas,* 15 NY2d 167; *People v Udzinski,* 146 AD2d 245; *People v Fleming,* 70 NY2d 947.)

## OPINION OF THE COURT

READ, J.

Defendant Cornell Louree was indicted for criminal possession of a weapon in the third degree (Penal Law § 265.02), and criminal possession of a weapon in the fourth degree (Penal Law § 265.01). On September 18, 2003, he pleaded guilty to attempted criminal possession of a weapon in the third degree in exchange for a one-year prison sentence, or two years if a prior conviction in Connecticut qualified as a predicate felony in New York.

Because defendant requested an unusually long adjournment before sentencing, the trial judge also required him to plead guilty to criminal possession of a weapon in the third degree,

with the understanding that he could later withdraw this plea and the count would be dismissed so long as he appeared in court for his scheduled sentencing on December 4, 2003, was not arrested in the meantime, and cooperated fully with the Probation Department in preparation of the presentence report. The judge informed him that

> "[i]n the event you fail to fully comply with any or all of these conditions, I am not bound to impose the negotiated sentence, you will not be permitted to withdraw your guilty plea, and I am authorized by law to impose a higher sentence of up to seven years in jail. You understand that?"

Defendant answered "Yes." The judge did not mention that a period of postrelease supervision would follow either the conditionally promised two-year or a potential seven-year sentence.

As it turned out, defendant did not fulfill any of the prerequisites for the more lenient sentence: he skipped his scheduled sentencing, he was arrested for robbery, and he did not cooperate in the preparation of his presentence report. In addition, the Connecticut conviction qualified as a felony. When defendant returned to court on December 22, 2003, his counsel moved to be relieved because defendant "wish[ed] to withdraw his plea and based on what he told me, I believe there will be a conflict." The court denied the motion. Defendant did, in fact, eventually move to withdraw his plea, his counsel explaining that

> "when he took the plea what [defendant] is telling me is that he was in his mind one hundred percent certain that he did not have a prior felony conviction in the State of Connecticut. That it, in fact, was a misdemeanor and if he had known that it was, in fact, a felony he would not have taken this plea."

The trial judge denied the application.

After discussion of other topics not relevant to this appeal, a plea for leniency by defense counsel, and a short statement from defendant, the trial judge reviewed what had happened at the September hearing and afterwards, and the proceeding ended as follows:

> "THE COURT: . . . Pursuant to the plea agreement, I'm not going to—pursuant to your breach of the

plea agreement, I'm not going to sentence you on
the E felony. On motion of the People, move to
withdraw his plea and dismiss the E felony?

"[DISTRICT ATTORNEY]: That's correct.

"THE COURT: That would be done. Criminal Posses-
sion of a Weapon in the Third Degree. Therefore, it
is the judgment of this Court that you are sentenced
to a period—sentenced to seven years incarceration
on the D violent felony offense followed by five years
postrelease supervision. $200 surcharge imposed.
$10 Crime Victims Assistance fee and $50 DNA
registration fee imposed. Government will draw
your blood.

"You've previously pled guilty—waived your right to
appeal.

"These proceedings are completed. Officers take
charge.

"THE DEFENDANT: I can't appeal?

"THE COURT: You got seven. Take charge."

The Appellate Division affirmed the judgment of conviction
and sentence, concluding briefly that

"defendant's contention that his plea was not know-
ingly, intelligently, and voluntarily entered because
he was not informed that he would be subject to a
mandatory period of post-release supervision is un-
preserved for appellate review since he did not move
either to withdraw his plea or vacate the judgment
of conviction on that basis" (28 AD3d 680 [2d Dept
2006]).

The court also declined to review the issue in the exercise of its
interest-of-justice jurisdiction, and expressed the view that our
decision in *People v Catu* (4 NY3d 242 [2005]) did not require a
different result. A Judge of this Court subsequently granted de-
fendant leave to appeal, and we now reverse.

"A trial court has the constitutional duty to ensure that a de-
fendant, *before* pleading guilty, has a full understanding of what
the plea connotes and its consequences" (*People v Ford*, 86 NY2d
397, 402-403 [1995] [emphasis added]). "The court is not
required to engage in any particular litany when allocuting the
defendant, but due process requires that the record must be

clear that the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant" (*id.* at 403 [internal quotation marks and citations omitted]). To fulfill this constitutional imperative, the trial judge must advise a defendant of the direct consequences of a plea and the resulting waiver of rights.

In *Catu*, we held that "[p]ostrelease supervision is a direct consequence of a criminal conviction" (4 NY3d at 244). Since a defendant contemplating a guilty plea "must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction" (*id.* at 245). Necessarily, then, a plea cannot be knowing, voluntary and intelligent if a defendant is ignorant of a direct consequence because of a deficiently conducted allocution. As a result, a defendant does not have to show that he would have declined to plead guilty if he had been correctly informed by the court (*id.*), and it is irrelevant that the prison sentence added to postrelease supervision is within the range of prison time promised at the allocution (*People v Van Deusen*, 7 NY3d 744, 745-746 [2006]).

Here, the People argue that defendant did not preserve the issue for appellate review, principally relying on *People v Lopez* (71 NY2d 662 [1988]). In *Lopez*, we observed that ordinarily "in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea under CPL 220.60 (3) or a motion to vacate the judgment of conviction under CPL 440.10," because "failure to make the appropriate motion denies the trial court the opportunity to address the perceived error and to take corrective measures" (*id.* at 665-666 [citations omitted]). We did, however, note an exception to this general rule for the "rare case" where, for instance, a defendant's factual recitation negates an essential element of the crime pleaded to, and the trial court fails in its duty to make further inquiry and instead accepts the plea (*id.* at 666). In such a case, "the defendant may challenge the sufficiency of the allocution on direct appeal, notwithstanding that a formal postallocution motion was not made," as "the court's attention should have been instantly drawn to the problem, and the salutary purpose of the preservation rule is arguably not jeopardized" (*id.*).

We similarly conclude that where a trial judge does not fulfill the obligation to advise a defendant of postrelease

supervision during the plea allocution, the defendant may challenge the plea as not knowing, voluntary and intelligent on direct appeal, notwithstanding the absence of a postallocution motion. In so deciding, we cannot shut our eyes to the actual or practical unavailability of either a motion to withdraw the plea under CPL 220.60 (3), or a motion to vacate the judgment of conviction under CPL 440.10 in these cases. If the trial judge does not mention postrelease supervision at the allocution, as happened here, a defendant can hardly be expected to move to withdraw his plea on a ground of which he has no knowledge. But if the trial judge informs the defendant of postrelease supervision during the course of sentencing, as also happened here, a defendant may no longer move to withdraw the plea since a motion may only be made under CPL 220.60 (3) "[a]t any time *before* the imposition of sentence" (emphasis added). Finally, the omission at issue is clear from the face of the record and therefore not properly raised in a CPL article 440 motion.*

Accordingly, the order of the Appellate Division should be reversed, defendant's plea vacated and the case remitted to Supreme Court for further proceedings on the indictment.

PIGOTT, J. (dissenting). Because I believe that defendant was required to preserve the issue for appellate review, I respectfully dissent. The record reveals that defendant was made aware of the postrelease component of his sentence at the sentencing proceeding (*see generally People v Catu*, 4 NY3d 242, 245 [2005]). Thus, defendant was required to preserve the issue as nothing in this case calls for the "rare case" exception to the preservation doctrine described in *People v Lopez* (71 NY2d 662, 666 [1988]). Here, defendant could have raised an objection to the sentencing judge and he would have then been able to raise the issue on his direct appeal (*see People v Fulton*, 30 AD3d 961 [4th Dept 2006], *lv denied* 7 NY3d 789 [2006]).

Accordingly, I dissent and would affirm the order of the Appellate Division.

---

* In *Catu*, the trial judge's failure to advise the defendant of postrelease supervision was, in fact, raised in a CPL article 440 motion. The People did not argue that this ground was apparent on the record and therefore the article 440 motion was improper. Accordingly, until today we had no occasion to decide whether a defendant may properly raise a *Catu* objection by way of a CPL article 440 motion. As stated in the text, we decide that a defendant may not.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and JONES concur with Judge READ; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judge SMITH concurs.

Order reversed, etc.