[879 NE2d 152, 849 NYS2d 13]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY HILL, Appellant.

Argued October 16, 2007; decided November 15, 2007

## POINTS OF COUNSEL

*Center for Appellate Litigation,* New York City (*Barbara Zolot* and *Robert S. Dean* of counsel), for appellant. The lower court could not remedy the *Catu* error by modifying appellant's sentence in lieu of plea vacatur. (*People v Van Deusen,* 7 NY3d 744; *People v Catu,* 4 NY3d 242; *People v Harris,* 61 NY2d 9; *Boykin v Alabama,* 395 US 238; *North Carolina v Alford,* 400 US 25; *People v Ford,* 86 NY2d 397; *People v Louree,* 8 NY3d 541; *People v Damiano,* 87 NY2d 477; *People v Selikoff,* 35 NY2d 227; *People v Richardson,* 100 NY2d 847.)

*Robert M. Morgenthau, District Attorney,* New York City (*David M. Cohn* and *Alan Gadlin* of counsel), for respondent. Defendant's guilty plea should not be disturbed, because he received the full benefit of his bargain. (*People v Keizer,* 100 NY2d 114; *People v Alexander,* 97 NY2d 482; *People v Hansen,* 95 NY2d 227; *People v Frederick,* 45 NY2d 520; *People v Miller,* 42 NY2d 946; *People v Fiumefreddo,* 82 NY2d 536; *People v Catu,* 4 NY3d 242; *People v Ford,* 86 NY2d 397; *People v Moissett,* 76 NY2d 909; *People v Torres,* 45 NY2d 751.)

## OPINION OF THE COURT

Chief Judge KAYE.

In April 2002, defendant pleaded guilty to rape in the first degree in full satisfaction of the indictment. The court sentenced him to a determinate 15-year imprisonment term. No mention was made, either during the plea or during the sentencing that followed one month later, of an additional five-year term of postrelease supervision, which defendant allegedly learned of from a fellow inmate. Defendant now claims that he would not have agreed to the plea had he known of the postrelease supervision, and he seeks vacatur of the plea.

As has been well established in our law, when a criminal defendant waives the fundamental right to trial by jury and pleads guilty, due process requires that the waiver be knowing, voluntary and intelligent (*see* NY Const, art I, § 6; *People v Ford*, 86 NY2d 397, 403 [1995]; *see also McCarthy v United States*, 394 US 459, 466 [1969] ["if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void"]). Prior to accepting a guilty plea, therefore, a defendant must be informed of the direct consequences of the plea. When a court fails to so advise the defendant, the plea cannot be deemed knowing, voluntary and intelligent, and defendant may withdraw the plea and be returned to his or her uncertain status before the negotiated bargain (*see People v Harris*, 61 NY2d 9, 17 [1983]; *People v Gina M. M.*, 40 NY2d 595 [1976]).

Among the direct consequences of pleading guilty is the period of postrelease supervision that follows a determinate sentence of incarceration. As we explained in *People v Catu* (4 NY3d 242, 245 [2005]), "[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction." In that the constitutional defect lies in the plea itself and not in the resulting sentence, vacatur of the plea is the remedy for a *Catu* error since it returns a defendant to his or her status before the constitutional infirmity occurred.[1]

In *People v Van Deusen* (7 NY3d 744 [2006]), defendant pleaded guilty, and the trial court promised a determinate sentencing range of between 5 to 15 years of incarceration with no mention of the postrelease supervision term. On the eve of sentencing, defendant moved to withdraw her guilty plea based on the trial court's failure to inform her of postrelease supervi-

---

1. *People v Selikoff* (35 NY2d 227 [1974]) does not warrant a different result (dissenting op at 194). There, the court, at sentencing, refused to fulfill the promised sentence because the court had learned, between the plea and the sentencing date, that defendant was the principal and not merely a pawn in a fraudulent scheme. Defendant never challenged the voluntariness of his plea and refused to withdraw it. When, at the time of a plea, a defendant possesses the requisite information to make an informed choice, the defendant's guilty plea is voluntary, so either the plea's vacatur or specific performance of the promise is appropriate. A *Catu* error, by contrast, affects the voluntariness of defendant's guilty plea, and thus makes vacatur the appropriate remedy.

sion. The court denied her motion and sentenced defendant to a determinate term of eight years of imprisonment with five years of postrelease supervision. This Court rejected the Appellate Division's rationale that vacatur of a guilty plea was not required when the sentencing court gave the defendant the benefit of her plea bargain, exposing her to a shorter total period of punishment. We held that:

> "At the time defendant pleaded guilty, she did not possess all the information necessary for an informed choice among different possible courses of action because she was not told that she would be subject to mandatory postrelease supervision as a consequence of her guilty plea. Accordingly, defendant's decision to plead guilty cannot be said to have been knowing, voluntary and intelligent" (*id.* at 746).

In effect, the Court rejected harmless error analysis by requiring vacatur of defendant's guilty plea (*see also People v Goss*, 286 AD2d 180, 184 [3d Dept 2001] ["as defendant never knowingly agreed to the five-year postrelease period of supervision to follow his 12-year determinate sentence, we reject the People's argument that the error in not disclosing this portion of the sentence to defendant is harmless"]).

Similarly, in *People v Louree* (8 NY3d 541, 545 [2007]), we held it "irrelevant that the prison sentence added to postrelease supervision is within the range of prison time promised at the allocution." Harmless error doctrine is inapposite when analyzing remedies for *Catu* errors (*see People v Coles*, 62 NY2d 908, 910 [1984] ["harmless error rules were designed to review trial verdicts and are difficult to apply to guilty pleas"]).

Here, at the time of his plea, defendant was not informed that a period of postrelease supervision would follow his term of incarceration. Thus, defendant did not possess the requisite information knowingly to waive his rights and must be permitted to withdraw his plea. That the trial court ultimately resentenced defendant to a total period of incarceration ($12^1/_2$ years) plus postrelease supervision ($2^1/_2$ years) equal to his originally promised sentence of incarceration does not change this conclusion.[2]

---

**2.** Defendant urges that, despite the mathematics, the sentence—because it adds postrelease supervision to incarceration—is not in any event equiva-

The dissent incorrectly believes that *Catu* and *Van Deusen* turned on the question whether "the defendant got the full benefit of her plea bargain" (dissenting op at 194); thus, the dissent attempts to undo the prejudice of defendant's involuntary guilty plea. Rather, *Catu*, *Van Deusen* and *Louree* made clear that the courts violated the defendant's due process rights—not the defendant's sentencing expectations. Therefore, we vacated the defendants' involuntary guilty pleas to remedy the constitutional violations. Here, we are constrained to give the same relief, exposing defendant to the full penalty of at least a 25-year prison term.

Accordingly, the order of the Appellate Division should be reversed, defendant's plea vacated and the case remitted to Supreme Court for further proceedings on the indictment.

PIGOTT, J. (dissenting). I respectfully dissent and would affirm the order of the Appellate Division. A grand jury charged defendant in a 32-count indictment with raping, sodomizing, and sexually abusing his daughter. A jury trial commenced on April 22, 2002, at which defendant's daughter, then 16, was the first to testify. She recounted for the jury in detail over several hours how defendant raped and abused her over a six-year period, beginning in 1994, when she was nine years old. Following the daughter's direct-examination testimony, defendant informed the court that he wished to plead guilty to the top count of the indictment, first-degree rape, in full satisfaction of the charges. Defendant admitted that his daughter's direct-examination testimony was true, and specifically, that he had forced her to have sex with him since she was nine years old. The court accepted defendant's plea and informed him that he would serve a prison sentence of 15 years. It is undisputed that no mention was made of any mandatory postrelease supervision. At sentencing, the court imposed the negotiated 15-year prison sentence.

In March 2004, approximately two years later, defendant challenged his judgment of conviction, arguing that his plea was involuntary because he had not been informed that his prison sentence carried a five-year period of postrelease supervision.

lent to the promised sentence. Moreover, he could, in fact, face more incarceration under the new sentence than under the agreed-to sentence. If he violated the postrelease supervision conditions within six months of the postrelease supervision term's end, he could receive an additional six months' incarceration beyond the term of postrelease supervision (*see* Penal Law § 70.45 [5]).

Following proceedings before Supreme Court, defendant's sentence was modified to a term of 12½ years in prison and 2½ years of postrelease supervision. The Appellate Division, with two Justices dissenting, affirmed defendant's modified sentence.

This Court has consistently held that a court's "failure or inability to fulfill a [sentencing] promise requires either that the plea of guilty be vacated or the promise fulfilled, but there is no indicated preference for one course over the other. The choice rests in the discretion of the sentencing court" (*People v Selikoff*, 35 NY2d 227, 239 [1974], *cert denied* 419 US 1122 [1975]). Indeed, a trial court may have good reason to choose specific performance over a defendant's request to withdraw his plea. For instance, when years have passed since the original plea, making it difficult for the People to proceed to trial, allowing vacatur of the plea would afford the defendant "more than he [is] entitled" (*id.* at 240). For that reason, "the State can hold a defendant to an agreed sentence rather than allow vacat[ur] of the plea when it would otherwise be prejudiced" (*People v McConnell*, 49 NY2d 340, 349 [1980]; *see People v Esposito*, 32 NY2d 921, 923 [1973]).

Contrary to the majority's position, I find nothing in our prior precedent that requires a vacatur of defendant's plea as the only possible remedy for the *Catu* error. In *People v Catu* (4 NY3d 242 [2005]) and *People v Van Deusen* (7 NY3d 744 [2006]), specific performance was not a viable option, so this Court had no occasion to address the issue. In that regard, in *Catu*, defendant pleaded guilty in exchange for the statutory minimum sentence (4 NY3d at 244). Because defendant had already received the minimum sentence, vacatur of the defendant's plea was the only possible remedy for the error. In *Van Deusen*, the defendant was misinformed about the possible sentencing range; she believed that the range was not less than five years or no more than 15 years in prison (7 NY3d at 745). The court modified the sentence to eight years' imprisonment and five years of postrelease supervision, but that sentence was more than the least amount of incarceration time she could have hoped to get at the time of her plea (*id.*). Thus, it could not be said with assurance in *Van Deusen* that the defendant got the full benefit of her plea bargain. Similarly, in *People v Louree* (8 NY3d 541 [2007]), the sole issue before this Court was whether the defendant was required to preserve for appellate review his complaint of the *Catu* error.

Here, the trial court chose the remedy of specific performance, which in my view, it had the authority to do. At the time of his

plea, defendant was promised a sentence of 15 years in prison. After the trial court's modification, defendant received the full benefit of his bargain, plus a windfall. Thus, unlike in *Catu* and *Van Deusen*, the modified sentence comported with the understanding and expectations of defendant at the time of his guilty plea. Finally, the trial court here had good reason to choose the remedy of specific performance over vacatur of the plea. Specifically, the People would be severely prejudiced if defendant's daughter was subjected to testifying once again at a new trial after several years have passed.

Judges CIPARICK, GRAFFEO and JONES concur with Chief Judge KAYE; Judge PIGOTT dissents and votes to affirm in a separate opinion in which Judges READ and SMITH concur.

Order reversed, etc.