Rivera, J.
(dissenting). On this appeal, we are presented with a bargained-for plea based on an illegal minimum incar-ceratory sentence, offered as an inducement for defendant’s waiver of his constitutionally protected right to liberty and the guarantees afforded by his right to trial. In violation of defendant’s due process rights, the Judge at the plea hearing failed to ensure the defendant understood the direct sentencing consequences of the plea, and wrongly informed defendant that the offer was a legal minimum rather than one precluded by law. Thus, since defendant’s plea was not knowing, voluntary and intelligent, the plea must be vacated. No less important to my determination that this plea cannot stand is the indisputable fact that the judicial practice employed in defendant’s case jeopardizes the public confidence in plea bargaining and the criminal justice system as a whole.
Unlike the majority, I conclude that we are not procedurally foreclosed from addressing the merits of defendant’s claims on direct appeal. Quite simply, the usual rules of preservation do not govern our review because this is far from the usual case. According to the record, the Judge represented to defendant that under the law, in exchange for pleading guilty, he could receive a sentence of three years’ incarceration, followed by two years of postrelease supervision. The Judge failed to indepen *226 dently confirm whether the sentence promise was in fact legal, and instead deferred that determination to “the learned folks in the prosecution’s office.” However, the Judge’s reliance on the work of others was misplaced because the information available to the court at the plea established that the only lawful minimum incarceratory time applicable to defendant was six years — a fact the Judge failed to discuss with defendant before he entered his plea. Six years’ imprisonment is coincidentally also the sentence imposed by the Judge after he determined that defendant’s sentence should be enhanced for violation of a plea condition, namely defendant’s possession of marijuana in the lobby of a residential building, conduct for which defendant was never criminally charged.
I.
Under our laws, the judge is responsible for accepting a plea after ensuring its validity, and the judge is the sole person authorized to impose a sentence. It is the “trial court [which] has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences” (People v Louree, 8 NY3d 541, 544 [2007] [emphasis omitted], quoting People v Ford, 86 NY2d 397, 402-403 [1995]).
Thus, the trial judge must ensure “that the record . . . [is] clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant” (People v Belliard, 20 NY3d 381, 385 [2013] [internal quotation marks and citations omitted]). In addition, the “[s]entence is primarily a judicial responsibility” and so the “|j]udge may not ignore those provisions of law designed to assure that an appropriate sentence is imposed” (People v Selikoff, 35 NY2d 227, 238, 240-241 [1974], cert denied 419 US 1122 [1975]; see also CPL 380.20 [“The court must pronounce sentence in every case where a conviction is entered”]; Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358, 362 [2008] [“the sentencing judge — and only the sentencing judge — is authorized to pronounce the PRS component of a defendant’s sentence”], superceded by statute People ex rel. Joseph II. v Superintendent of Southport Correctional Facility, 15 NY3d 126 [2010]).
When a plea fails to comply with the due process requirement that the plea represent a “voluntary [,] [knowing] and intelligent choice among the alternative courses of action” *227 (People v Catu, 4 NY3d 242, 245 [2005], quoting Ford, 86 NY2d at 403), the plea must be vacated (People v Hill, 9 NY3d 189, 193 [2007]; Catu, 4 NY3d at 244). Where, as here, the plea is based on an illegal minimum period of incarceration, the plea is defective at its inception, because defendant cannot have made a knowing, voluntary and intelligent decision to plead when he did not have knowledge that his bargained-for sentence was half the legal minimum (see Catu, 4 NY3d at 245 [failure of the court to advise defendant of postrelease supervision required reversal of the conviction]). Moreover, the requirements of due process refer not to illusory plea offers, but to plea offers that can in fact, and under law, be fulfilled (see Selikoff, 35 NY2d at 241). “Thus, any sentence ‘promise’ at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate” (id. at 238). Therefore, a court must also ensure that a defendant’s bargained-for benefit is a lawful promise. When a court fails to do so, and treats as wholly valid a plea that is constitutionally defective, a defendant may seek to be relieved from the plea bargain by vacating the plea (People v Cameron, 83 NY2d 838, 839-840 [1994]).
Furthermore, both the United States Supreme Court and this Court have determined that “a guilty plea induced by an unfulfilled promise either must be vacated or the promise honored” (Selikoff, 35 NY2d at 241, citing Santobello v New York, 404 US 257, 260 [1971]). In the case of an illegal sentencing promise, the judge’s only option is to vacate the plea because specific performance of the agreed upon minimum prison term is unavailable. However, the judge here failed to follow any lawful course to remedy the due process violation inherent in the plea, and instead imposed a sentence that was double the minimum offered to defendant. Defendant’s plea must therefore be vacated.
The People contend that defendant’s plea was knowing and voluntary because defendant understood that if he breached the plea conditions imposed by the court he faced a maximum sentence of 12 years’ imprisonment, and the court met defendant’s legitimate sentencing expectations by imposing a six-year prison term. The sentence imposed is irrevelant to the matter at hand because “[the] defect lies in the plea itself and not in the resulting sentence” (Hill, 9 NY3d at 191); as a consequence “the court [ ] violated the defendant’s due process rights — not the defendant’s sentencing expectations” (id. at 193).
*228 In any event, the People’s argument is based on their misreading of the plea proceeding record. As that record establishes, the Judge never retreated from three years as the baseline for defendant’s minimum sentence, and on several occasions expressly measured defendant’s sentence against that three-year floor. For example, in describing the beneficial sentence defendant would receive in exchange for his guilty plea, the Judge told defendant that under the high-end of the sentencing spectrum he could have imposed up to 12 years’ imprisonment — which as it turned out was incorrect[1] — and reminded defendant that “[y]ou’ve been given a chance to plead guilty and you are going to receive a three-year sentence with two years post-release supervision.” When discussing the plea conditions, the Judge said that if defendant complied he was "guaranteed the three years with the two years post-release supervision,” and if he did not comply, he was still eligible to receive the three-year term. Thus, the Judge continued to hold out three years as the minimum from which any sentence would be determined. Of course, the Judge could not sentence defendant to a legal term of three years, and thus even under the People’s analysis, defendant’s reliance on that minimum rendered his plea involuntary.
The People further argue that a sentencing court has the inherent power to correct an illegal sentence (People v Williams, 87 NY2d 1014, 1015 [1996]). True enough, but a court could not have corrected the sentence to coincide with the plea offer. Put another way, defendant could not be legally sentenced to three years’ imprisonment for the crime to which he pleaded guilty.
Nevertheless, the People contend that under People v Collier if the original promise could not be imposed, the sentencing court could impose another lawful sentence as long as it “comports with the defendant’s legitimate expectations” (22 NY3d 429, 434 [2013]). According to the People, under that principle, because defendant received the legal statutory minimum of six years, the ultimate sentence imposed fulfilled his expectations of a “minimum” sentence. The People apparently ignore that the original sentencing offer was a minimum of three years, not six, and that three years was the number of *229 consequence to defendant. As this Court has recognized, “the overwhelming consideration for the defendant is whether he [or she] will be imprisoned and for how long” (People v Gravino, 14 NY3d 546, 559 [2010]).
The People further claim that if defendant had complied with the plea conditions he could have received a three-year sentence by repleading to a lesser offense. Yet for defendant to plead down, the original plea must be vacated — exactly the relief the People oppose and which defendant seeks on this appeal.[2]
To the extent the People argue that defendant could be subjected to a legal sentence greater than the three years’ imprisonment he was promised, we have never held that a court may impose a sentence that exceeds the minimum period expressly offered as an inducement for a guilty plea, and our case law supports the opposite conclusion.[3] Cases where a sentencing court “fixed” an illegal sentence through imposition of a lawful sentence are distinguishable because none of them dealt with an increase in the minimum amount of time defendant could expect. In Collier,' defendant, as part of his plea bargain, pleaded guilty to two counts of robbery and received a sentence of 25 years in prison on the first count, and five years on the other count — to run either consecutively or concurrently based on the Judge’s discretion (22 NY3d at 431). The Judge imposed the sentences consecutively and defendant appealed, arguing both that the sentence was excessive and that the five-year sentence was illegal {id. at 432). The Appellate Division agreed that the five-year sentence was illegal, vacated the sentence, and remitted the matter for resentencing (id.). Defendant was resentenced to concurrent terms of 25 years and 10 years (id.). Defendant appealed, arguing that his plea had to be vacated because his expectation when pleading guilty on *230 the first plea had been five years (id.). However, our Court upheld defendant’s sentence of 25 years because it fit within defendant’s original expectation of a sentence from 25 years’ to 30 years’ imprisonment (id. at 433-434).
In Williams, this Court rejected a defendant’s challenge to a resentence that imposed an enhanced maximum period of incarceration directly within the period expressly explained to defendant at the time of the plea (87 NY2d at 1015). As the facts of that case establish, defendant was originally sentenced to an illegal indeterminate prison term of 3V2 to 7 years, and thereafter resentenced to a lawful term of 3V2 to IOV2 years’ imprisonment. The Court concluded that defendant did not have a legitimate expectation of finality in the prior illegal sentence because the Judge had informed defendant in advance that he was pleading to a crime that, by law, allowed the Judge "to impose a sentence of up to 15 years” (id.). As relevant to the instant appeal, the defendant’s minimum of 3V2 years’ imprisonment went unchanged from the illegal sentence to the resentence. Thus, this Court properly focused on the defendant’s maximum sentencing exposure.
Similarly, the Court held in People v Murray that a judge does not “arbitrarily trifle [ ] with the legitimate expectations of [a] defendant based on the plea” when the defendant is told that the plea is conditional, and advised of the sentence to be imposed should defendant violate the court’s terms (15 NY3d 725, 726 [2010]). In Murray, the Judge informed the defendant that he would “probably” receive youthful offender status and a nine-month sentence if he complied with certain plea conditions set by the court. Otherwise, the court would sentence the defendant as an adult (id.). When the defendant failed to comply, the court imposed an adult sentence, which this Court upheld on appeal as “rooted in the terms of defendant’s plea and evident to all concerned” (id.). The court in Murray had expressly stated that the consequence of a violation of the plea condition was imposition of a sentence wholly unlike the sentence available to a youthful offender. In contrast, the Judge in defendant’s case always indicated that the sentence was based on a three-year minimum imprisonment term.
The decisions in Collier, Williams and Murray presuppose that a defendant who pleads guilty while fully aware of the period of incarceration attached to the plea is making a choice to bargain away freedom for at least the minimum, and up to the maximum, as described by the court. In accordance with *231 this guiding principle, defendant’s plea must be vacated because it was based on a three-year illegal minimum sentence, which the court communicated as the lowest end of the applicable sentencing range.
II.
When a judge fails “to ensure that defendant understands the nature of the charge and that the plea is intelligently entered” (People v Lopez, 71 NY2d 662, 666 [1988]), as a matter of due process and fundamental fairness, it is unreasonable to demand preservation by objection. It is particularly unjust to require preservation in a case such as the one before us, where the error escaped discovery of all those involved and trained in the law — the judge, prosecutor and defense counsel.
Moreover, the preservation rule imposed by the majority is not unqualifiedly required by our case law under the circumstances presented in this appeal. Preservation serves important purposes. It allows a claim to be brought to the trial court’s attention in order to “provide the opportunity for cure before a verdict is reached and a cure is no longer possible,” “advance [ ] the truth-seeking purpose of the trial” and ensure “the goal of swift and final determinations of the guilt or nonguilt of a defendant” (People v Gray, 86 NY2d 10, 20-21 [1995]). However, we have recognized that rules of preservation must give way under circumstances where “the salutary purpose of the preservation rule is arguably not jeopardized” (People v Lopez, 71 NY2d 662, 666 [1988]). Exceptions to preservation are narrow, but not so restrictive as to be meaningless.
Thus, the Court recognized in Lopez that preservation is not required in the “rare case” where the voluntariness of the plea is called into question by a defendant’s factual recitation negating an essential element of the crime, and the court fails to adequately undertake its duty-bound inquiry to ensure the defendant understands the charge and plea (see id.). In such a case “the court’s attention should have been instantly drawn to the problem” (id.). In Louree, the Court employed a pragmatic approach to preservation, and reviewed on direct appeal a Catu violation, because the Court recognized “the actual or practical unavailability” of a motion to challenge a plea which cannot be “knowing, voluntary and intelligent if a defendant is ignorant of a direct consequence because of a deficiently conducted al-locution” (Louree, 8 NY3d at 545-546).
Defendant’s case for direct appellate review to our Court, notwithstanding the lack of a postallocution motion, is at least *232 as, if not more, compelling as these cases. For example, in Lopez, the Court made clear that preservation is not required when a judge fails, in accordance with a judge’s constitutional duty, to make an additional inquiry once the voluntariness of the plea is placed in question during the allocution (71 NY2d at 666). In defendant’s case the illegality of the sentence offer was similarly evident from the record. Yet, the Judge proceeded to inform defendant that the offer was a legal minimum term of incarceration, without first having confirmed the statutory sentencing range. Thus, the Judge failed to take appropriate steps to ensure that defendant understood the nature of the sentencing offer.
As for the exception recognized in Louree, here defendant had no genuine reasonable opportunity to present the Judge with a counterview of the inherently defective plea offer. In Louree, the lack of opportunity was due to the timing of the error. The trial judge did not mention postrelease supervision at the allocution, depriving the defendant of information necessary to determine whether to move to withdraw his plea. Nevertheless, this Court did not require that defendant investigate whether the Judge’s description of the sentence was correct. When the trial judge informed the defendant at sentencing about postrelease supervision, it was too late because a motion to withdraw a plea may only be made under CPL 220.60 (3) before the imposition of sentence (Louree, 8 NY3d at 546).
Here, once the Judge stated at the plea hearing that the minimum was lawful, defendant relied on that statement and had no reason for further inquiry into the legality of the plea offer. Like the defendant in Louree, defendant Williams based his decision to plead guilty on the Judge’s error, and should be viewed as similarly lacking the opportunity to move to withdraw. Moreover, application of the preservation requirement here presupposes defendant’s prior awareness of the very error that the Judge was required to present to the defendant (see People v Peque, 22 NY3d 168, 216 [2013, Lippman, Ch. J., dissenting] [“A preservation requirement presumes knowledge that would make the advisement unnecessary — a classic ‘Catch-22’ ”]). However, “[i]f the prosecutor, defense counsel and the court all suffered from the same misunderstanding” about the plea offer, “it would be unreasonable to conclude that *233 defendant understood it” (People v Worden, 22 NY3d 982, 985 [2013]).[4]
The circumstances of this case further illustrate the inapplicability of preservation to defendant’s claim. The nature of postallocution motion practice presumes that a defense attorney has a reason to question the validity of the plea process and the offer. This makes sense in the context of a plea allocution, which involves a defendant’s responses to questions from the judge, intended to identify a defendant’s lack of understanding and volition, and where defense counsel, acting on behalf of the defendant, has reason to ensure the allocution meets constitutional requirements (see People v Tyrell, 22 NY3d 359, 366 [2013] [plea was defective where “the records do not affirmatively demonstrate” that defendant understood the waiver and “there is a complete absence of discussion” by the court, defense counsel or defendant of the pertinent constitutional rights]; Lopez, 71 NY2d at 667 [trial court conducted a proper inquiry into defendant’s allocution to ensure the factual sufficiency of defendant’s factual recitation]; People v Harris, 61 NY2d 9, 17 [1983] [“a record that is silent will not overcome the presumption against waiver”]). However, in the case before us, defense counsel negotiated the plea with the prosecutor and the court accepted the offer as lawful. As a consequence defendant had no reason to question the legality of its terms.
Application of the preservation rule to these facts absolves the court of its constitutional duty to ensure that defendant is informed of the direct consequences of his plea, and limits defendant’s remedial options. The majority states the defendant can request the Appellate Division exercise its interest of justice authority to grant him relief (majority op at 224), but there are no assurances that the Court will be disposed in defendant’s favor. Here, two Justices dissented, finding the plea comports with constitutional requirements. Alternatively, the majority states defendant can proceed with an ineffective assistance of counsel claim. However, as with a Catu violation, *234 the error here is apparent on the record and therefore an article 440 motion is improper (see CPL 440.10 [2] [b], [c]; People v Cooks, 67 NY2d 100, 104 [1986] [“When . . . sufficient facts appear on the record to permit the question to be reviewed, sufficiency of the plea allocution can be reviewed only by direct appeal. Only in the unusual situation that sufficient facts with respect to the issue do not appear on the record is a CPL 440.10 motion to vacate available as a means of review” (citation omitted)]). All the while, defendant has served more than the three-year minimum he was promised.
It seems apparent that the salutary purpose of the preservation rule is not furthered by refusing to consider defendant’s claim on direct review to this Court {Lopez, 71 NY2d at 666). Therefore, defendant should be permitted to pursue his challenge to the validity of the plea by direct appeal to us.
III.
Defendant’s case is yet another reminder that our criminal justice system depends on the proper administration of plea bargains (Santobello, 404 US at 260-262 [“ ‘plea bargaining,’ is an essential component of the administration of justice. Properly administered, it is to be encouraged”]). As the United States Supreme Court has recognized, “ours is for the most part a system of pleas, not a system of trials” (Missouri v Frye, 566 US —, —, 132 S Ct 1399, 1407 [2012] [internal quotation marks and citations omitted]). “In today’s criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant” (566 US at —, 132 S Ct at 1407). “[P]lea negotiation serves the ends of justice” (Selikoff, 35 NY2d at 233). More specifically, the final product of negotiation, the bargained-for promise, ensures the “prompt and largely final disposition of most criminal cases”; avoids the “corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial”; “protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release”; and “by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned” (Santobello, 404 US at 261).
The legitimacy of our “bargain-for-sentence” criminal process is based on the assurance that where promises are made to induce a defendant’s guilty plea, they are capable of being *235 enforced (see id. at 262 [“when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled”]). Without such assurances defendants would be loathe to engage in a risky high-stakes negotiation involving trading personal liberty interests in exchange for no benefit at all. Thus, a criminal justice system that tolerates unenforceable bargains increases the potential “detrimental effect on the criminal justice system that will result should it come to be believed that the State can renege on its plea bargains with impunity notwithstanding defendant’s performance” (People v Danny G., 61 NY2d 169, 176 [1984], quoting People v McConnell, 49 NY2d 340, 349 [1980]). Similarly, because illegal sentencing promises can bear no assurance of enforcement, they undermine public confidence in plea bargains, and discourage defendants from entering these agreements. It is therefore crucial that “the court in overseeing and supervising the delicate balancing of public and private interests in the process of plea bargaining” (Selikoff, 35 NY2d at 243) conduct its constitutional duty to ensure the lawfulness of promises leading to a defendant’s incarceration. The Judge here failed to fulfill his duty, and the sole remedy for the defect presented on this record is to vacate the plea.
Chief Judge DiFiore and Judges Pigott, Stein and Garcia concur; Judge Rivera dissents and votes to affirm in an opinion in which Judge Fahey concurs.
Order reversed and case remitted to the Appellate Division, First Department, for consideration of the facts and issues raised but not determined on the appeal to that Court.

. The correct sentence was a determinate term between 6 and 15 years, followed by a term of postrelease supervision between IV2 and 3 years (see Penal Law § 70.70 [4] [b] [i]).

. It is worth noting that defendant was sentenced in January of 2012. If he had repleaded at that point to the originally agreed on three-year sentence, his sentence would already be complete.

. The Court’s holding in People v DeValle (94 NY2d 870 [2000]) is not to the contrary. In that case, the Court held that the trial court had inherent power to correct an illegal sentence where defendant did not seek withdrawal of the plea, and also failed to establish detrimental reliance on the illegal sentence that could not be addressed by returning him to his preplea status, if he so desired. Here, defendant seeks the remedy the Court in DeValle recognized as appropriately available to the defendant on the facts of that case. Thus, unlike the defendant in DeValle who, in essence, demanded specific performance of an illegal sentence, defendant here seeks no more than what the law allows, namely to be returned to his preplea status.

. The majority is incorrect in its assertion that allowing defendant to bring a direct claim would “swallow the preservation doctrine whole” (majority op at 224 n 2). Here, defendant should be absolved from the normal preservation rules, not solely because he lacked actual knowledge of the error, as the majority asserts, but because he relied on an assertion of the trial judge that the plea offer was based on a legal minimum sentence. When a court’s statement creates the perception that no further investigation óf a sentence is needed, defendant cannot be held responsible for relying on that statement.