Chief Judge DiFiore
(concurring). For the reasons that follow, I concur in the result. In my view, defendants’ original convictions were constitutionally obtained under this Court’s jurisprudence and permissibly used as predicate convictions to enhance defendants’ sentences.
In 1998, with the adoption of Jenna’s Law, the legislature “eliminated] parole for all violent felony offenders . . . [and] enacted a scheme of determinate sentencing to be followed by periods of mandatory postrelease supervision” (PRS) (see People v Catu, 4 NY3d 242, 244 [2005]; Penal Law § 70.45 [1]). The statutory mandate of PRS, which continues beyond a defendant’s release from his or her maximum determinate term of incarceration, had “ ‘a definite, immediate and largely automatic effect on defendant’s punishment’ ” (Catu, 4 NY3d at *212 244, quoting People v Ford, 86 NY2d 397, 403 [1995]). The failure of many trial courts to properly impose that PRS term, in connection with both trial and plea convictions, has resulted in a chaotic landscape and led to a litany of cases before this Court, beginning with People v Catu (4 NY3d 242 [2005]).
In Catu, we addressed a trial court’s failure to advise the defendant of his PRS term in connection with his bargained-for sentence on a guilty plea where the defendant’s status as a predicate felony offender mandated that his sentence include a five-year PRS period. The defendant in Catu sought the vacatur of his plea on direct appeal and moved for the same relief through a CPL 440.10 motion, seeking to return to his preplea position before the trial court. We held that PRS “is a direct consequence of a criminal conviction” such that the failure to inform a defendant of his or her PRS term prior to taking a guilty plea violated the long-standing due process requirement that pleas be entered “knowingly, voluntarily and intelligently” (id. at 244, 245). We further held that the remedy for that error is to permit a defendant to vacate his or her plea and return to the trial court (see id.).[1] As we later explicated, “vacatur of the plea is the remedy for a Catu error since it returns a defendant to his or her status before the constitutional infirmity occurred,” i.e., the preplea status where defendant faces the risk of an even greater determinate sentence and the certain imposition of PRS if convicted (People v Hill, 9 NY3d 189, 191 [2007]).
Prior to 2008, because Penal Law § 70.45 (1) mandated that determinate sentences include a period of PRS, sentences without the proper imposition of PRS were illegal. Thus, the remedy in cases where the trial court failed to advise defendant at the time of the guilty plea of PRS in connection with the bargained-for sentence was a resentencing. Since the conviction was on a guilty plea, the vacatur of that plea was also *213 required. The court could not merely grant specific performance of the promised, and more lenient, sentence.[2] However, in 2008 the legislature enacted Penal Law § 70.85, “[t]ransitional exception to determinate sentencing laws,” creating an alternative remedy for the trial court’s failure to advise a defendant of his or her PRS term at the time of his or her guilty plea.[3] The statute authorizes the court to “re-impose the originally imposed determinate sentence of imprisonment without any term of [PRS],” and permits that sentence to “be deemed a lawful sentence,” so long as the district attorney consents (Penal Law § 70.85). Accordingly, with section 70.85, the legislature carved out an exception to Penal Law § 70.45 thereby “allowing a determinate sentence without a term of PRS to stand as a legal sentence” (People v Pignataro, 22 NY3d 381, 384 [2013]). The statute relegates PRS to a possible consequence in plea cases in the relevant time period, rather than a definite, immediate, and automatic part of a defendant’s sentence. We later sanctioned this transitional remedy as “a constitutionally permissible legislative remedy for the defectiveness of the plea” (id. at 387). Defendants are effectively given more lenient sentences while their plea convictions are afforded a much needed finality.
In a related line of cases, we addressed a trial court’s error in failing to pronounce PRS at sentencing following either a trial verdict or a knowing, voluntary and intelligent guilty plea where a PRS term was included on the commitment sheet, which reflects the court’s commitment of the defendant to the custody of the Department of Correctional Services (DOCS)[4] (see People v Sparber, 10 NY3d 457 [2008]; CPL 380.20).[5] We held that the “sole remedy” for that procedural error “is to *214 vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement” (Sparber, 10 NY3d at 471). As we later clarified in a matter involving a trial conviction, that resentencing proceeding “is not a plenary proceeding,” but is “limited to remedying this specific procedural error,” i.e., the court’s failure to pronounce the sentence of PRS (People v Lingle, 16 NY3d 621, 635 [2011]).
Then there were the cases where the sentence of PRS was never imposed as the trial court failed to pronounce the PRS term at sentence and also failed to include any such sentence on the commitment order to DOCS. These defendants without a PRS sentence would be released from prison prior to the expiration of their determinate sentences without any supervision, thus serving less punishment than originally imposed by the trial court and less punishment than statutorily required. In those cases, in an attempt to ensure the defendant was serving a legal sentence under section 70.45, DOCS administratively imposed PRS (see Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358 [2008]). This extrajudicial attempt to impose PRS at a postjudgment stage was illegal. Specifically, we held that PRS, as any sentence, must be pronounced by the court at sentencing and, therefore, administrative imposition of the PRS term by DOCS was prohibited (see id. at 362). However, the remedy for that error, too, was a resentencing proceeding in the trial court (see e.g. People v Velez, 19 NY3d 642, 645-646 [2012]).
In order to facilitate such resentencing proceedings, where there was no imposition of PRS in a sentence by the trial court, the legislature passed Correction Law § 601-d. The statutory procedure allowed for the resentencing of persons “in DOCS’s custody, or under its supervision, [that were] given a determinate sentence which was required by law to include PRS, but where DOCS’s records do not show that a PRS term was actually imposed” (id. at 646). Such a defendant is considered a “designated person” under the statute and the department is instructed to “make notification of that fact to the court that sentenced such person, and to the inmate or releasee,” at which point “[t]he court shall promptly seek to obtain sentencing minutes, plea minutes and any other records and shall . . . conduct any reconstruction proceedings that may be necessary” (Correction Law § 601-d [2], [4] [b]).
*215 The postjudgment imposition of PRS proved somewhat problematic and, in People v Williams (14 NY3d 198 [2010]), we placed a temporal limitation on a court’s ability to impose PRS in these situations. We held that “after release from prison, a legitimate expectation in the finality of a sentence arises and the Double Jeopardy Clause prevents reformation [of the sentence] to attach a PRS component to the original completed sentence” (id. at 217). Put differently,
“once a defendant is released from custody and returns to the community after serving the period of incarceration that was ordered by the sentencing court, and the time to appeal the sentence has expired or the appeal has been finally determined . . . the Double Jeopardy Clause prevents a court from modifying the sentence to include a period of [PRS] ” (id. at 219-220).
The corrective relief by the court for the double jeopardy violation is the vacatur of the illegal resentence and the reinstatement of the original sentence (id. at 222). Importantly, while the Double Jeopardy Clause prohibits untimely imposition of any new punishment, including PRS, the constitutional error is a function of the resentencing court acting outside of its authority. It does not affect a defendant’s original conviction (see e.g. People v Jordan, 15 NY3d 727 [2010] [reinstating original sentence where defendant resentenced to PRS in violation of Double Jeopardy Clause]).
Here, the constitutional infirmity that both defendants argue rendered their respective original convictions[6] “unconstitutionally obtained” within the meaning of CPL 400.15 (7) (b) is the failure of the trial courts to impose PRS as part of their original judgment or otherwise advise defendants in their original proceeding that the sentence included a mandatory period of PRS. Defendants’ essential argument is that this is a Catu error that infected their guilty pleas and requires disqualification of those convictions as predicate convictions. With that in mind, I now turn to the cases before us. In doing so, I adopt the facts of the majority, but highlight those relevant to my analysis.

*216
People v Smith

In November 2001, defendant Smith pleaded guilty to robbery in the first degree, a violent felony (Penal Law §§ 70.02 [1]; 160.15 [4]). Defendant, when sentenced in January 2002, was never sentenced to PRS as he was not advised that his bargained-for sentence would include a mandatory PRS term, and defendant’s commitment sheet reflected no such term. Nevertheless, upon his release from prison in April 2007, DOCS administratively imposed a PRS term. In October 2008, this illegal imposition of PRS was captured and defendant was resentenced pursuant to Correction Law § 601-d based on the omission of a PRS term from his sentence for his 2002 conviction. During that resentencing proceeding, the trial court admitted that it did not have possession of the minutes of defendant’s 2001 plea proceeding and, thus, could not be sure if it had advised defendant of the mandatory PRS term. Pivotally, defendant agreed to “waive waiting for the actual minutes to arrive and waive any claims he had with respect to the plea” so long as the court “grant[ed] him the minimum post-release period” of 2V2 years (the maximum possibility being five years). The record reflects that the court specifically asked defense counsel the following: “You’re asking me to sentence [defendant] to the minimum period of post-release supervision and not withdraw [defendant’s] plea. Is that what you’re talking about?”, to which defense counsel responded “[defendant] indicated he’s prepared to do that if the prosecutor’s office would be willing to go along with it.” The court then sentenced defendant to the minimum PRS period.
Based on this exchange, defendant, having chosen not to seek the remedy of vacatur of the guilty plea and the opportunity to be restored to a preplea status, cannot now claim his original conviction was unconstitutionally obtained (see generally People v DeValle, 94 NY2d 870 [2000]).
Defendant was not actually sentenced to PRS in 2002. Nor was he sentenced to a PRS term upon the administrative imposition of PRS by DOCS, as that action was a nullity (see Garner, 10 NY3d at 360). To rectify that error, defendant was brought back to the trial court in 2008 to be resentenced. There, before the imposition of sentence, defendant declined to seek the Catu remedy of vacatur of his plea (and return to uncertain preplea status), asking instead for the minimum 2V2-year PRS period. Consequently, defendant effectively waived any argument that his plea was not knowingly, voluntarily and *217 intelligently entered or that it was otherwise unconstitutionally obtained.
To the extent defendant could invoke our 2010 decision in Williams to render the untimely imposition of PRS at resentenc-ing in 2008 a violation of double jeopardy, that illegal sentence would not affect the legality of the underlying plea conviction. “The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner” (United States v DiFrancesco, 449 US 117, 135 [1980] [citation and internal quotation marks omitted]). Indeed, after electing to maintain his guilty plea with knowledge of the imposition of PRS, after the 2008 resentencing defendant was in the same position as any defendant with a lawfully obtained conviction and an illegal sentence. The only appropriate corrective relief is the vacatur of the illegal resentence and the reinstatement of the original sentence (see Williams, 14 NY3d at 222). Defendant cannot now retain the benefit of the bargained-for plea, but eliminate the 2002 conviction for consideration as a predicate felony conviction based on the corrected Catu error.

People v Fagan

In April 2000, defendant Fagan pleaded guilty to attempted robbery in the first degree. Defendant was not advised that his sentence would include a mandatory PRS term, nor was such term pronounced at sentencing or included in the court’s commitment order. Nevertheless, upon release in March 2006, DOCS administratively imposed a PRS term. This illegal imposition of PRS was captured in January 2009 and defendant also was resentenced in the trial court pursuant to Correction Law § 601-d based on the omission of a PRS term from his sentence for his 2000 conviction. However, that resentence violated the Double Jeopardy Clause under this Court’s decision in Williams because defendant had already completed his determinate sentence and served a portion of his PRS term. In March 2010, the illegal imposition of PRS was vacated by the trial court on these grounds and defendant’s original sentence was restored. Thus, as of that time—prior to the use of the original conviction as a predicate felony for enhanced sentencing—defendant’s sentence for his 2000 conviction was the originally imposed determinate term of seven years, with no PRS, as promised to defendant at the time of his guilty plea.
Penal Law § 70.85 specifically provides that, as an alternative to the remedy of vacatur of the plea, a court can “re-impose *218 the originally imposed determinate sentence of imprisonment without any term of [PRS] Here, defendant received that lawful non-PRS sentence. Defendant’s original sentence for his 2000 conviction was reimposed and the intervening attempts to impose PRS were nullified (under Williams). Thus, like defendant Smith, defendant Fagan’s original conviction on his guilty plea was not infected by a Catu error, as the sentence actually promised at the time of the plea was the sentence actually imposed. Having received the benefit of the “constitutionally permissible legislative remedy for the defectiveness of the plea” in section 70.85 (Pignataro, 22 NY3d at 387), no constitutional infirmity remained with respect to defendant’s original conviction. The fact that, due to the court’s resentenc-ing error at the postjudgment stage, defendant Fagan served some portion of his PRS term (some of which is within the range of the expected determinate sentence imposed) and may be entitled to some other form of relief does not undermine the lawfulness of that original conviction (see DiFrancesco, 449 US at 135 [noting that the wrong move of a sentencing judge does not invalidate the conviction]).
As of March 2010, defendant’s 2000 conviction was a lawful conviction for which he received a legal sentence. In fact, defendant received the precise sentence for which he bargained, undermining any argument that his guilty plea was not knowingly, voluntarily and intelligently entered. Therefore, nothing barred the use of the 2000 conviction as a predicate felony conviction in connection with defendant’s sentence for his 2010 conviction.
For those reasons, I would reverse the Appellate Division order in both matters, vacate defendants’ resentences, and reinstate defendants’ original sentences.

. The majority’s retroactivity analysis is predicated on the basis that the Catu remedy of automatic vacatur of the plea did not exist before our 2005 decision (see majority op at 205). However, at the time both defendant Smith and defendant Fagan pleaded guilty, the law allowed defendants to challenge the voluntariness of their pleas if the courts imposed sentences in excess of that for which defendants bargained and were promised on the record (see e.g. People v Selikoff, 35 NY2d 227 [1974]; People v Esposito, 32 NY2d 921 [1973]). Thus, where a defendant pleaded guilty in exchange for a promised determinate sentence and a court imposed PRS without his or her knowledge, he or she could allege, even at the pre-Catu stage, that the guilty plea was involuntary and unconstitutionally obtained (see People v Harris, 61 NY2d 9 [1983]; CPL 400.15 [7] [b]).

. Notably, we rejected an argument that this error could be cured by resentencing the defendant such that the prison term and PRS term together are within the range of the sentence promised to defendant in connection with the plea (see Hill, 9 NY3d at 192; People v Louree, 8 NY3d 541, 545 [2007]; People v Van Deusen, 7 NY3d 744, 746 [2006]; but see People v Collier, 22 NY3d 429 [2013]).

. This remedy is available for determinate sentences imposed between September 1, 1998 and June 30, 2008.

. While this department is now referred to as the Department of Corrections and Community Supervision (DOCCS), it was known as DOCS at the time relevant to these appeals and, therefore, will be referred to as DOCS throughout.

. In Sparber, the defendant was not informed of his PRS term prior to pleading guilty, and the court failed to pronounce PRS at sentencing, but defendant’s commitment sheet reflected a five-year PRS term (see id.). The de *214 fendant rejected the remedy of the vacatur of his plea under Catu, seeking a more lenient sentence by having his PRS term expunged (see id. at 466).

. “Original conviction” refers to defendant Smith’s 2002 conviction and defendant Fagan’s 2000 conviction.