Rivera, J.
(dissenting). This Court has long abided by the cardinal principle that “[a] conviction obtained in violation of one’s constitutional rights may not be used to enhance punishment for another offense” (People v Harris, 61 NY2d 9, 16 [1983]). That is, until now.
In these appeals, the majority has determined that defendants’ respective convictions may serve as a predicate for sentencing purposes because the constitutional defect complained of was first recognized in People v Catu (4 NY3d 242 [2005]), and has no retroactive application to defendants’ cases. This conclusion is not supported by the case law, which clearly *219 shows that Catu was based on due process guarantees already well established in both federal and state jurisprudence. As a consequence, and unsurprisingly, we previously applied Catu retroactively. The legislature acted on the same understanding and passed Penal Law § 70.85 in response to Catu and its progeny on the assumption that all tainted sentences, going back to 1998, were subject to the Catu holding. Therefore, because distinguishing defendants’ convictions here belies case law, legislation, and fairness, I dissent.
In addition to the general constitutional prohibition on the use in sentencing of unconstitutionally obtained prior convictions (People v Harris, 61 NY2d at 16, citing Burgett v Texas, 389 US 109, 115 [1967]), New York has a statutory ban on consideration of such convictions as predicate offenses. Pursuant to CPL 400.15 (7) (b), “[a] previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction.”[1] An unconstitutional conviction is one “obtained in violation of the defendant’s constitutional rights, i.e., [a defendant’s] rights as defined by the law existing at the time the conviction was obtained or by subsequent law applicable to the judgment under principles of retroactivity” (People v Catalanotte, 72 NY2d 641, 644-645 [1988]).
Here, the relevant due process rights were known and clearly defined at the time of the defendants’ respective convictions. In the context of guilty pleas, both the United States Supreme Court and this Court have long held that a plea must be knowing and voluntary for the plea to comport with the due process guaranteed to criminal defendants (Boykin v Alabama, 395 US 238, 242 [1969]; Matter of Chaipis v State Liq. Auth., 44 NY2d 57, 63 [1978]; People v Hill, 9 NY3d 189, 191 [2007], citing NY Const, art I, § 6; People v Ford, 86 NY2d 397, 403 [1995]; McCarthy v United States, 394 US 459, 466 [1969]). As an additional protection of a defendant’s rights, “[a] trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences” (Ford, 86 NY2d at 402-403 [cita *220 tions omitted]). To that end, “the record must be clear that ‘the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant,’ ” and the court must advise the defendant of those direct consequences of the plea “which halve] a definite, immediate and largely automatic effect on defendant’s punishment” (id. at 403). In Catu, in reliance on these due process requirements, the Court stated that the mandatory postrelease supervision (PRS) portion of a sentence is “a direct consequence of a criminal conviction” (4 NY3d at 244). Accordingly, “the failure of a court to advise of [PRS] requires reversal of the conviction” (id. at 245), because “the constitutional defect lies in the plea itself and not in the resulting sentence” (Hill, 9 NY3d at 191).
As this discussion illustrates, the Court in Catu did not rely on amorphous or unsettled concepts of due process or break new legal ground. It simply applied existing doctrine “defined by the law existing at the time the conviction was obtained” (Catalanotte, 72 NY2d at 645), to the facts before it (see Ford, 86 NY2d at 403 [explaining the plea is not voluntary when a defendant is not told of the direct consequences of guilty plea and defining “direct consequence(s)” as those that are “definite, immediate and largely automatic” upon entry of the plea]).
The same rules apply here. The courts in defendants’ cases failed to advise them of the PRS portion of their sentences. As a consequence, these defendants’ convictions were obtained in violation of their recognized due process rights, rendering their respective pleas constitutionally defective (People v Catu, 4 NY3d 242, 245 [2005]; majority op at 195-196). Under Harris and CPL 400.15, the convictions may not serve as a predicate offense to enhance their sentences for a future offense (Harris, 61 NY2d at 16; CPL 400.15 [7] [b]).
This would not be the first time that this Court has applied Catu retroactively. In People v Pignataro, defendant pleaded guilty to attempted assault and was orally sentenced to a 15-year determinate sentence in February 2001, without being advised of his mandatory PRS (22 NY3d 381, 383 [2013]). Thereafter, defendant did not perfect his direct appeal, and instead commenced post-conviction proceedings, first to challenge the constitutionality of his guilty plea and later to challenge his Penal Law § 70.85 resentencing (id.). The provision was enacted in 2008, in the wake of Catu and a subsequent *221 line of cases addressing various sentencing challenges, and “authorizes a trial court to ‘re-impose,’ with the People’s consent, ‘the originally imposed determinate sentence of imprisonment without any term of [PRS] ’ ” (Pignataro, 22 NY3d at 384, quoting Penal Law § 70.85). We would have no occasion to consider Pignataro’s challenge to Penal Law § 70.85—a legislative remedy specifically designed to address Catu errors—if the plea was not obtained in violation of the defendant’s constitutional rights, making his sentence unlawful and subject to the legislative “cure.”[2]
Our determination that Penal Law § 70.85 was “a constitutionally permissible legislative remedy” (id. at 387) for a defective plea establishes that while the type of relief may change, the underlying constitutional violation remains the same. Certainly that was the legislature’s understanding when it passed Penal Law § 70.85, creating a “[transitional exception to determinate sentencing laws” applicable only to cases in which a sentence without PRS was imposed between September 1, 1998, the year the legislature made PRS a mandatory component of determinate sentencing, and the 2008 date when section 70.85 took effect (L 1998, ch 1 [Jenna’s Law]). The legislature would not have needed to reach back to 1998 in order to “avoid the need for pleas to be vacated” (Governor’s Approval Mem, Bill Jacket, L 2008, ch 141 at 5-6, 2008 NY Legis Ann at 106), if Catu applied only prospectively.
The decision applying Catu retroactively is quite limited and would affect a narrow class of individuals. Those potentially affected are defendants who completed PRS before resentencing, and who commit another crime that places them at risk for sentence enhancement. Put another way, the class includes only defendants who: (1) were convicted and sentenced after 1997 but before 2005, and who were not advised of the mandatory PRS portion of the sentence; (2) were released from prison before 2008, did not have their convictions cured by Penal Law *222 § 70.85, and served the mandatory PRS; and (3) committed a new offense that puts them at risk for sentence enhancement.[3]
Apart from the other legal reasons I have discussed, it is inherently unfair to permit sentencing enhancement for this group of defendants because it would mean “the accused in effect suffers anew from the deprivation” of due process which infected the prior conviction (Burgett, 389 US at 115). Such result undermines our constitutional principles and the holding of Catu.
Judges Abdus-Salaam, Stein, Fahey and Garcia concur; Chief Judge DiFiore concurs in result in a separate concurring opinion; Judge Rivera dissents and votes to affirm in an opinion.
In each case: Order reversed, the resentence vacated and the original sentence reinstated.

. As I discuss, since defendants’ convictions implicated their federally recognized due process rights, I have no occasion to address the People’s argument that CPL 400.15 (7) (b) does not apply to state constitutional violations.

. The majority makes too much of the short memorandum order in People v Stewart (16 NY3d 839 [2011]), suggesting that the decision supports denying retroactive application of Catu (majority op at 211). The summary opinion in Stewart merely recognized the obvious—that Catu errors are plain on the face of the record and thus reviewable on direct appeal. The Court did not foreclose any other avenue of review, or limit the reach of Catu. Indeed, in People v Hill (9 NY3d 189, 190 [2007]), the Court applied Catu to a defendant’s CPL 440.10 postjudgment challenge to his 2002 conviction.

. Since the issue before us involves defendants who are repeat offenders it is worth noting that the State’s recidivism rate has been steadily declining since 2001, and hit a record low in 2013, with only 9% of ex-offenders released from prison in 2010 being incarcerated for a new crime in the years that followed (Department of Corrections & Community Supervision, Press Release, Return Rate for Parolees Committing New Felony Crimes Hits Historic Low, Nov. 24, 2014, http://www.doccs.ny.gov/PressRel/2014/Recidivism_Rates_ 2010.pdf, cached at http://www.nycourts.gov/reporter/webdocs/ Recidivism_Rates_2010.pdf).