[5 NE3d 5, 982 NYS2d 34]

The People of the State of New York, Respondent, v Andre Collier, Appellant.

Argued November 13, 2013; decided December 12, 2013

## POINTS OF COUNSEL

*Claude Castro & Associates PLLC*, New York City (*Claude Castro* and *D. Paul Martin* of counsel), for appellant. I. The trial court and the Third Department erred by denying appellant's request to withdraw his plea and then imposing a greater sentence than appellant had agreed to in his plea bargain. (*People v Taveras*, 10 NY3d 227; *People v Martin*, 278 AD2d 743; *People v Hill*, 9 NY3d 189; *People v Van Deusen*, 7 NY3d 744; *People v Rivera*, 51 AD3d 1267; *People v Donnelly*, 80 AD3d 797; *People v Armstead*, 52 AD3d 966; *People v Bruning*, 45 AD3d 1179; *People v Kinch*, 15 AD3d 780; *People v Cameron*, 83 NY2d 838.) II. The trial court and the Third Department erred by rendering appellant's plea bargain involuntary and unconstitutional. (*People v Hill*, 9 NY3d 189; *People v Van Deusen*, 7 NY3d 744; *People v Rowland*, 8 NY3d 342.)

P. *David Soares, District Attorney*, Albany (*Steven M. Sharp* of counsel), for respondent. Since defendant received the full benefit of his bargain, his guilty plea should not be disturbed. (*People v Prescott*, 66 NY2d 216; *People v Taylor*, 65 NY2d 1; *People v Frederick*, 45 NY2d 520; *People v Miller*, 42 NY2d 946; *People v Fiumefreddo*, 82 NY2d 536; *People v Cornell*, 16 NY3d 801; *People v Seaberg*, 74 NY2d 1; *People v Francabandera*, 33 NY2d 429; *People v Lopez*, 28 NY2d 148; *People v Cameron*, 83 NY2d 838.)

## OPINION OF THE COURT

READ, J.

By indictment dated February 8, 2005, the grand jury accused defendant Andre Collier of five first-degree robberies (Penal Law § 160.15 [3]). Each count of the indictment related to a holdup at a different store in the Albany area during a two-month period in the fall of 2004. Defendant was alleged to have displayed and threatened the immediate use of a knife to force employees of these stores to turn over monies in the cash register.

At a hearing on April 22, 2005, defendant was offered a plea bargain requiring him to plead guilty to two counts of robbery in the first degree (the first and fifth counts of the indictment) in satisfaction of the full indictment and several unindicted robberies. Under the terms of the proposed plea agreement, as described by County Court, defendant would be sentenced to a determinate term of 25 years in prison on the first count of the indictment, and five years on the fifth count, each to be followed by five years of postrelease supervision. Further, the judge retained discretion to direct these sentences to run either concurrently or consecutively, based upon his evaluation of the information in the yet-to-be-prepared presentence report. Defendant agreed to these terms and conditions and pleaded guilty.

On June 17, 2005, defendant appeared for sentencing, and County Court declared him to be a second felony offender. Based on his review of the presentence report, the judge imposed the agreed-upon 25-year and five-year determinate sentences consecutively rather than concurrently. Defendant appealed, arguing that his sentence was excessive. On June 26, 2008, the Appellate Division affirmed the judgment, holding that defendant was "precluded from challenging the sentence imposed as harsh and excessive" because he had knowingly, intelligently and voluntarily waived his right to appeal (52 AD3d 1121, 1122 [3d Dept 2008], *lv denied* 11 NY3d 786 [2008]).

Defendant then moved pro se pursuant to CPL article 440 to vacate the judgment of conviction and set aside his sentence on the ground the five-year sentence he received to satisfy count five of the indictment was illegal. In support of his motion, defendant enclosed a letter from a prison official indicating that, as a second felony offender, his minimum legal sentence for first-degree robbery was 10 years. In a decision and order dated August 10, 2009, County Court denied the motion without a hearing. The judge noted that defendant had not suffered any prejudice by virtue of the alleged error, which, in fact, benefitted him. He additionally concluded that defendant had waived this issue by not raising it on direct appeal. Defendant appealed the judge's order.

On December 2, 2010, the Appellate Division agreed that defendant's five-year sentence on count five of the indictment was illegal, and held that he was not barred from raising this issue in a CPL article 440 motion even though it could have been raised on direct appeal (79 AD3d 1162 [3d Dept 2010]). The court vacated defendant's sentence and remitted the matter to County Court for the judge to "resentence defendant in a manner that ensures that he receives the benefit of his sentencing bargain or permit both parties the opportunity to withdraw from the plea agreement" (*id.* at 1163).

At the resentencing hearing on January 13, 2011, defendant asked to withdraw his plea; the People, however, requested that County Court resentence defendant. By this time, six years had elapsed since the robberies charged in the indictment. Voicing his intention to "impose a sentence that clearly ensures that [defendant] receives the benefit of the sentencing bargain," the judge sentenced him to concurrent determinate prison terms of 25 years on the first count of the indictment and 10 years on the fifth count, each to be followed by five years of postrelease supervision.

On appeal, defendant argued that County Court could not legally resentence him to 10 years in prison on the fifth count of the indictment because he originally pleaded guilty to this crime in exchange for a five-year incarceratory term. The Appellate Division disagreed, observing that

> "defendant actually received a lesser sentence under the resentence than the one he agreed to under the plea agreement because County Court directed that the sentences run concurrently, instead of consecutively, thereby reducing his aggregate prison exposure

from 30 to 25 years. Thus, defendant received a sentence that was better than 'the benefit of his bargain' upon resentencing, and County Court was not required to allow him to withdraw his plea" (91 AD3d 987, 988 [3d Dept 2012]).

A Judge of this Court granted defendant leave to appeal (19 NY3d 1024 [2012]), and we now affirm.

"[A] guilty plea induced by an unfulfilled promise either must be vacated or the promise honored" (*People v Selikoff*, 35 NY2d 227, 241 [1974], *cert denied* 419 US 1122 [1975], citing *Santobello v New York*, 404 US 257, 260 [1971]; *accord People v Esposito*, 32 NY2d 921, 923 [1973]). "The choice rests in the discretion of the sentencing court" and "there is no indicated preference for one course over the other" (*Selikoff*, 35 NY2d at 239; *see also Santobello*, 404 US at 263 ["The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, . . . or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, *i.e.*, the opportunity to withdraw his plea of guilty"]).

The sentencing court may have good reason to reject a defendant's request to withdraw his plea. Where, as here, years have gone by since the original plea, it may be difficult for the People to locate witnesses, obtain their renewed cooperation and proceed to trial on the "then stale indictment[ ]" (*Selikoff*, 35 NY2d at 240 [discussing *Esposito, supra*]). Under these circumstances, allowing a defendant to withdraw his plea would give him "more than he was entitled" to under the bargain he struck (*id.*). Thus, the People "can hold a defendant to an agreed sentence rather than allow vacation of the plea when it would otherwise be prejudiced" (*People v McConnell*, 49 NY2d 340, 349 [1980]).

Moreover, specific performance of a plea bargain does not foreclose "technical divergence from the precise terms of the plea agreement" so long as the defendant's reasonable expectations are met (*Paradiso v United States*, 689 F2d 28, 31 [2d Cir 1982]). And a defendant's subjective view of the plea bargain is not controlling: "[c]ompliance with a plea bargain is to be tested against an *objective* reading of the bargain, and not against a defendant's subjective interpretation thereof" (*People v Cataldo*,

39 NY2d 578, 580 [1976] [emphasis added]; *see also Paradiso*, 689 F2d at 31 ["In determining what is reasonably due a defendant (t)he dispositive question . . . is what the parties to (the) plea agreement *reasonably* understood to be the terms of the agreement" (emphasis added and internal quotation marks omitted)]).

Thus, if the originally promised sentence cannot be imposed in strict compliance with the plea agreement, the sentencing court may impose another lawful sentence that comports with the defendant's legitimate expectations. Again, "the reasonable understanding and expectations of the parties, rather than technical distinctions in semantics, control the question of whether a particular sentence imposed violates a plea agreement" (*Gammarano v United States*, 732 F2d 273, 276 [2d Cir 1984]; *see also Paradiso*, 689 F2d at 31 [where the "sentence actually received" was "less severe than the maximum bargained for, (the defendant was) in no position to complain that his expectations were frustrated"]; *People v Williams*, 87 NY2d 1014 [1996] [upholding a sentence modification that corrected an illegal sentence by *increasing* the indeterminate incarceratory term of 3½ to 7 years to 3½ to 10½ years because the judge advised the defendant during the plea proceedings that he could receive up to 15 years in prison]).

In light of these principles, we conclude that the judge's modification of defendant's sentence was proper. Simply put, the resentencing comported with defendant's reasonable expectation that he would receive a minimum determinate prison term of 25 years and a maximum determinate prison term of 30 years in exchange for his plea. County Court did not resentence defendant in conformity with the technical terms of the plea agreement with respect to the fifth count of the indictment. But defendant, in fact, achieved the best outcome allowed by his plea since County Court, upon resentencing, reduced his maximum incarceratory term from 30 to 25 years in order to cure the illegality in the sentence originally imposed to resolve the fifth count. Thus, defendant clearly received the benefit of his bargain.

Defendant insists otherwise. He takes the position that his "aggregate prison exposure" is "irrelevant" even if more favorable than what he originally agreed to and received because his "two sentences [were] separate and distinct and operate[d] independent[ly] [of] each other." And since the original "plea bargain [could not] be legally fulfilled" with respect to the five-

year sentence on the fifth count of the indictment, "both sentences must be vacated and [defendant] must [be] given the opportunity to withdraw his plea in its entirety." The dissent likewise contends that defendant's plea must be vacated because he "pleaded guilty without knowledge that his bargained-for five-year sentence was half the minimum prescribed by law" (dissenting op at 437). But as already discussed, once a defendant has pleaded guilty a reviewing court must make an objective determination of whether the ultimate sentence fulfilled the sentencing promise—here, a minimum determinate prison term of 25 years and a maximum determinate prison term of 30 years. The defendant's subjective interpretation of the agreement does not control (*see Cataldo*, 39 NY2d at 580; *Paradiso*, 689 F2d at 31).

Defendant also claims that *People v Catu* (4 NY3d 242 [2005]) and its progeny prescribe plea vacatur because his due process rights were violated, and the dissent agrees (*see* dissenting op at 436). In *Catu*, the trial court did not advise the defendant during the plea colloquy that he was subject to a mandatory period of supervision after his release from prison, a direct consequence of his plea. Because a defendant pleading guilty must be aware of the direct consequences of a plea in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the *Catu* court's failure to apprise the defendant of postrelease supervision required reversal of the conviction and vacatur of the plea.*

As we subsequently made clear in *People v Hill* (9 NY3d 189 [2007]), though, there is a difference between due process rights and sentencing expectations. When, as here, the defendant possesses sufficient information about his promised sentence to make an informed choice at the time of the plea allocution, "the defendant's guilty plea is voluntary [and] so either the plea's vacatur or specific performance of the promise is appropriate. A *Catu* error, by contrast, affects the voluntariness of [a] defendant's guilty plea, and thus makes vacatur the appropriate remedy" (*id.* at 191 n 1 [distinguishing *Selikoff*]).

Accordingly, the orders of the Appellate Division should be affirmed.

---

* As we discussed in *People v Pignataro* (22 NY3d 318 [2013]), the legislature eventually enacted Penal Law § 70.85 to allow a sentencing court to honor the bargain originally knowingly, voluntarily and intelligently struck by the defendant with the People. Section 70.85 did not "remov[e] PRS as a direct consequence of [the defendant's] plea" (*see* dissenting op at 438 n).

Chief Judge LIPPMAN (dissenting). Because defendant's guilty plea was obtained in violation of his due process rights, vacatur of the plea is the proper remedy for the constitutional deprivation. Accordingly, I dissent.

For a guilty plea to comport with due process, defendant must "possess[ ] the requisite information to make an informed choice" (*People v Hill*, 9 NY3d 189, 191 n 1 [2007]). Acknowledging this bedrock principle of our criminal justice system, the majority nonetheless determines that the illegal sentence here violated defendant's "sentencing expectations," rather than his due process rights (majority op at 435), drawing the inexplicable conclusion that defendant's choice to waive his fundamental rights was knowing and voluntary, despite his ignorance that the imposition of the promised five-year sentence was a legal impossibility.

Contrary to the majority's contention, this case raises the same constitutional concerns addressed in our jurisprudence involving plea allocutions where courts failed to inform defendant of a mandatory term of postrelease supervision (PRS). The constitutional principle underlying our PRS cases is that, without knowledge of a direct consequence of her criminal conviction, a defendant's "plea cannot be deemed knowing, voluntary and intelligent" (*Hill*, 9 NY3d at 191; *see also People v Catu*, 4 NY3d 242, 245 [2005]). The appropriate remedy for a constitutionally defective plea is automatic vacatur (*Hill*, 9 NY3d at 191 n 1; *People v Louree*, 8 NY3d 541, 545 [2007]; *People v Van Deusen*, 7 NY3d 744, 746 [2006]; *Catu*, 4 NY3d at 245; *McCarthy v United States*, 394 US 459, 466 [1969] ["if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void"]). This is true despite the theoretical feasibility under the law of resentencing defendant to a combined period of incarceration and PRS equal to or less than the maximum potential term to which defendant agreed (*see Louree*, 8 NY3d at 545; *Van Deusen*, 7 NY3d at 746; *see also People v Rowland*, 8 NY3d 342, 345 [2007]; *People v Pichardo*, 1 NY3d 126, 130 [2003]). Harmless error analysis, including the majority's assessment of whether specific performance effectively "cured" the defect, has no place in this context because when a plea is obtained in violation of defendant's due process rights, "no later events [can] rescue it" (*People v Boyd*, 12 NY3d 390, 396 [2009, Pigott, J., dissenting]; *see also Hill*, 9 NY3d at 192; *People v Coles*, 62 NY2d 908, 910 [1984]).

We are equally bound to apply this constitutional principle in circumstances where a plea bargain includes an illegal sentence. Only recently this Court reiterated that "the imposition of a mandatory term of imprisonment" is a direct consequence of an unconditional guilty plea (*People v Peque*, 22 NY3d 168, 184 [2013], citing *Boykin v Alabama*, 395 US 238, 244 n 7 [1969], *Jamison v Klem*, 544 F3d 266, 277 [3d Cir 2008], and *People v Harnett*, 16 NY3d 200, 205 [2011]). Similarly, in *Harnett* we recognized that "[t]he direct consequences of a plea—those whose omission from a plea colloquy makes the plea *per se invalid*—are essentially the core components of a defendant's sentence: *a term of probation or imprisonment*, a term of post-release supervision, a fine" (16 NY3d at 205 [emphasis added]). Defendant here pleaded guilty without knowledge that his bargained-for five-year sentence was half the minimum prescribed by law, rendering his defective plea indistinguishable from that of a defendant unaware of a term of mandatory PRS. Both scenarios involve an accused who is uninformed of a direct consequence of her plea, and in both cases vacatur of the guilty plea is mandatory (*see People v Cameron*, 83 NY2d 838, 840 [1994] [when the "sentence pursuant to the plea agreement . . . was (not) authorized by law . . . the sentence must be reversed and the case remitted for resentencing with the opportunity for both parties to withdraw from the plea agreement" (citation omitted)]).

In holding otherwise, the majority effectively sanctions the coexistence of two incompatible rules: where the plea is to a single count, conditioned on an illegal sentence, vacatur is required; where, on the other hand, the plea is to multiple counts, only one of which held out the promise of an illegal sentence, a court-imposed increase of that sentence will be allowed so long as defendant's aggregate exposure to incarceration is not increased. Deciding which rule applies depends on the constitutionally irrelevant question of whether a defendant's plea bargain includes an illegal sentence in isolation or as part of a package deal. While perhaps attractively pragmatic, the second rule blatantly ignores that "the constitutional defect lies in the plea itself and not in the resulting sentence" (*Hill*, 9 NY3d at 191). By denying the constitutional dimensions of the injury, the majority blurs a distinction we have taken care to delineate in the past between a constitutionally defective plea and a plea induced by a promise that goes unfulfilled. In the latter case, the sentencing court surely has the discretion to vacate

the plea or to give defendant specific performance of the plea bargain (*People v Selikoff*, 35 NY2d 227, 241 [1974], *cert denied* 419 US 1122 [1975]). But where a plea is unknowing and thus involuntary due to an illegal sentence, only vacatur will remedy the violation of defendant's due process rights.* Because here defendant's plea bargain included the promise of an illegal sentence, it was necessarily unknowing, and the majority effects a significant and troubling departure from precedent by failing to vacate his plea.

Judges GRAFFEO, SMITH, PIGOTT and ABDUS-SALAAM concur with Judge READ; Chief Judge LIPPMAN dissents in an opinion in which Judge RIVERA concurs.

Orders affirmed.

---

* This dissent is consistent with *People v Pignataro* (22 NY3d 381 [2013]). In reaching a different result, that decision turned on the presence of legislative action. By removing PRS as a direct consequence of Pignataro's plea (*see* Penal Law § 70.85), the legislature effectively eliminated the factor responsible for the plea's constitutional infirmity. Here, the legislature has not reduced the mandatory minimum sentence applicable to count five from 10 to 5 years. Accordingly, the five-year sentence remains illegal and the plea involuntary.