People v Flesch

2026 NY Slip Op 03258

May 26, 2026

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Respondent,

v

Johnathon T. Flesch, Appellant.

Decided on May 26, 2026

No. 40

J. Scott Porter, for appellant.

John C. Tunney, for respondent.

Rivera, J.

[*1]

Defendant claims he should be resentenced before a different judge because the prosecutor failed to recommend probation, as initially promised under the plea agreement. We reject defendant's claim and affirm the Appellate Division order based on the unique circumstances presented here, where the negotiated sentence was illegal; County Court disqualified the District Attorney and his office based on a conflict of interest; and the court-appointed special prosecutor agreed to the Probation Department's recommended sentence of shock probation, which defendant himself requested as an alternative to probation, and which comported with defendant's expectations under the original plea agreement.

I.

Defendant Johnathon Flesch pleaded guilty in Seneca County Court to one count of second-degree assault, in satisfaction of two multi-count indictments, in exchange for five years' probation and the potential opportunity to participate in the Monroe County Mental Health Treatment Court, if so recommended and ordered. As would later [*2]become clear, County Court could not lawfully impose probation alone and defendant was not eligible for the treatment court in Monroe County.

At the scheduled sentencing hearing in February 2024, the newly-elected District Attorney appeared and requested that the court not impose the probation sentence agreed to by the prior District Attorney's office, because he believed it was inadequate given the nature of the offense. Defendant responded that the parties "had an agreement in place" resolving several pending matters and the new District Attorney could not renege on the promise. Defendant also contended that participation in the Monroe County Mental Health Treatment Court was merely a recommendation, not a condition, of the plea agreement, and would only become a part of defendant's probation sentence if he were accepted into the program.

Stating, incorrectly, that the prosecution could legally change its recommended sentence, the court explained that it had originally accepted the plea because all the parties had agreed to the sentencing terms. However, because the new District Attorney no longer recommended probation, the court stated it would give defendant a chance to withdraw his plea that day or in the future. Defendant instead moved to disqualify the new District Attorney on the ground that he had worked on defendant's case during his previous employment as an Assistant Public Defender, which presented a conflict of interest. The court adjourned the sentencing proceeding and, prior to the next appearance, granted defendant's motion based on the conflict of interest, disqualified the District Attorney and his office, and appointed as special prosecutor the former prosecutor who had negotiated the plea agreement.

When the special prosecutor and defendant next appeared to discuss sentencing on March 27, 2024, the court stated it would not impose a probation sentence without some mental health component, though it was unclear to the court whether defendant was eligible for the Monroe County Mental Health Treatment Court. The court noted that, according to the presentence report, the Probation Department recommended a "shock probation" sentence (or "split sentence"), which the court acknowledged would address defendant's mental health needs.FN1 The special prosecutor responded that he was "certainly fine with" shock probation but would leave it up to defendant to address how the court should credit the pre-sentence incarceratory period he had already served. After further discussion about the viability of placing defendant in a treatment court program, the court reemphasized that it would not impose a probation sentence that did not address defendant's mental health needs:

"Straight probation with no guarantees of mental health treatment; I'm not in favor of that . . . Straight probation is not the answer to those crimes. But if I can be assured he will get treatment for whatever his problem is, I'll go along with it. Straight probation is not mental health treatment . . . I'm not going forward with straight probation given what has occurred in this case and given his needs."

The court then adjourned sentencing to allow the court and the attorneys to determine whether treatment court was a viable option for defendant. However, later that day, the court contacted defense counsel and the special prosecutor to [*3]notify them that it had misspoken when it asserted that the prosecution—or any party—had the right to withdraw from a plea and sentencing agreement.

Two days later on March 29, 2024, prior to the next appearance, the court sent the special prosecutor and defense counsel a letter, advising them that it would not impose the probation sentence promised under the original plea agreement and explaining its reasons. Specifically, the letter stated that the promised sentence was illegal because a Class D felony under Penal Law § 60.05 (5) requires a sentence of imprisonment in accordance with Penal Law § 70.00 or Penal Law § 85.00; defendant had not contacted, and was not eligible for, the Monroe County Mental Health Treatment Court; and the court did not have the presentence report or victim impact statement at the time of the plea, and it had only recently become aware of the extent and severity of defendant's outstanding criminal matters. The letter further described some of defendant's multiple pending misdemeanor and felony charges in neighboring Wayne County and in Seneca County. Given these realities, the court explained that if defendant did not withdraw his plea, it was inclined to impose a five-year determinate term of incarceration.

In a letter to the court in response, defendant stated, among other things, that he would accept shock probation as a sentence because it would accord with his expectations under the plea agreement. Defendant argued that:

" '[S]pecific performance of a plea bargain does not foreclose technical divergence from the precise terms of the plea agreement so long as the defendant's reasonable expectations are met' [People v Collier (22 NY3d 429, 433 [2013])]. [Such l]awful sentences upon a plea of Assault in the Second Degree (Penal Law § 120.05 [3]) include determinate imprisonment of two to seven years, a definite sentence of one year or less, and shock probation, also known as a split sentence [see People v Ferguson, 177 AD3d 900, 901 (2d Dept 2019); see also Penal Law §§ 60.05 (5); 70.02 (1) (c), (2) (b), (3) (c); 70.00 (4); 60.01 (2) (d)]. Importantly . . . defendant has been held for seven months, meaning he has satisfied the maximum term of jail that would be imposed if the sentence was shock probation."

At the rescheduled sentencing proceeding on April 10, 2024, the court reiterated that if defendant did not withdraw his plea, it would impose a term of incarceration. In response to the court's inquiry, the special prosecutor stated he was "certainly not going to object to State incarceration . . . or whatever the [c]ourt deems appropriate after hearing from the parties today." Defendant did not move to withdraw his plea. Then, after denying defendant's motion for the court to recuse itself, and upon consideration of defendant's letter, the court imposed a four-year determinate prison term, to be followed by three years' post-release supervision.FN2

The Appellate Division affirmed the judgment (236 AD3d 1469, 1469 [4th Dept 2025]). As relevant here, the Court concluded that the prosecution did not violate the plea agreement; rather, "the [sentencing] court itself determined that the negotiated sentence was not appropriate" and properly afforded defendant an opportunity to withdraw his plea before sentencing (id. at 1470). A Judge of this Court granted defendant leave to appeal (43 NY3d 1055 [2025]).

II.

Defendant argues that the District Attorney reneged on the plea agreement by telling the court that probation was an inadequate sentence and, thus, we must vacate the sentence and order resentencing before a different judge.FN3 We conclude that under the circumstances of this case, vacatur and resentencing are not required or warranted.

The prosecution may not violate a promise made in exchange for a guilty plea (see People v Tindle, 61 NY2d 752, 754 [1984]; People v Torres, 67 NY2d 659, 661 [1986]). As the United States Supreme Court has explained, [*4]"when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled" (Santobello v New York, 404 US 257, 262 [1971]). "We need not consider whether the breach of promise had an actual impact on the length of the sentence imposed by the trial court, for such consideration is not relevant in fixing the appropriate remedy" (Tindle, 61 NY2d at 754). "A guilty plea induced by an unfulfilled promise either must be vacated or the promise honored," and "[t]he choice rests in the discretion of the sentencing court" (Collier, 22 NY3d at 433, quoting People v Selikoff, 35 NY2d 227, 239, 241 [1974], cert denied 419 US 1122 [1975]). A "promise [is] honored" by ordering specific performance of the plea bargain, in which case the sentence is vacated and the defendant is "resentenced by a different judge" (Santobello, 404 US at 263). Specific performance "does not foreclose 'technical divergence from the precise terms of the plea agreement' so long as the defendant's reasonable expectations are met" (Collier, 22 NY3d at 433, quoting Paradiso v United States, 689 F2d 28, 31 [2d Cir 1982]). As Collier further explained, "a defendant's subjective view of the plea bargain is not controlling: '[c]ompliance with a plea bargain is to be tested against an objective reading of the bargain, and not against a defendant's subjective interpretation thereof' " (Collier, 22 NY3d at 433, quoting People v Cataldo, 39 NY2d 578, 580 [1976]). The animating concerns informing the holdings in these cases include "fairness in securing agreement between an accused and a prosecutor" (Santobello, 404 US at 261) and ensuring that the defendant receives the benefit of their bargain, based on objectively reasonable expectations (Tindle, 61 NY2d at 754).

Of course, a sentencing court's ultimate responsibility is to impose an appropriate sentence based on the defendant's particular circumstances (see People v Hicks, 98 NY2d 185, 188 [2002]; People v Farrar, 52 NY2d 302, 305, 307 [1981]; People v Avery, 85 NY2d 503, 506-507 [1995]). Indeed, "[a]s a matter of law and strong public policy, a sentencing promise made in conjunction with a plea is conditioned upon 'its being lawful and appropriate in light of the subsequent presentence report or information obtained from other reliable sources' " (Hicks, 98 NY2d at 188, quoting Selikoff, 35 NY2d at 238). In other words, a court cannot impose an illegal sentence or one that does not accord with a defendant's circumstances. A court is free to reject the parties' recommended sentence, and must allow the defendant to withdraw their plea when the court is unable or unwilling to impose the negotiated sentence (see e.g. People v Rodney E., 77 NY2d 672, 676 [1991] [holding that where "the court finds that it is unable to impose the sentence which was agreed upon when the defendant pleaded guilty, the defendant should be permitted to withdraw the plea"]; People v Johnson, 14 NY3d 483, 485 [2010] [noting that the sentencing court gave the defendant the opportunity to withdraw his plea where it declined to adjudicate him as a youthful offender, despite a plea agreement that he be adjudicated as such]; People v Parilla, 8 NY3d 654, 658 [2007] [explaining that the sentencing court advised the defendant that he could withdraw his plea where it enhanced the agreed-upon sentence after reading the probation report]). Accordingly, while a sentencing court has discretion to deviate from the parties' negotiated sentence, it may not do so if the prosecution changes its recommended sentence in violation of the plea agreement.

III.

On this appeal we are not presented with the concerns that informed Tindle (61 NY2d at 754), Torres (67 NY2d at 661), or Santobello (404 US at 262-263). First, as the parties concede, and the court below explained, the negotiated sentence cannot lawfully be imposed on defendant because second-degree assault under Penal Law § 60.05 (5)—a Class D felony—requires a sentence of imprisonment in accordance with Penal Law § 70.00 or 85.00. Therefore, the prosecutor could not knowingly recommend an illegal sentence, even if previously agreed to by the parties. And the court had no authority to impose such a sentence, which would be subject to vacatur on appeal (see People v Sparber, 10 NY3d 457, 469-472 [2008] [holding that failure to pronounce the required sentence amounts to a procedural error and requires vacatur and resentencing]; see also CPL 450.30 [1] [authorizing appellate review where a sentence is "invalid as a matter of law," including "when the terms thereof are unauthorized"]; CPL 470.15 [4] [c] [intermediate appellate courts may vacate a sentence that is "unauthorized, illegally imposed or otherwise invalid as a matter of law"]).

Second, the court subsequently granted defendant's motion to disqualify the District Attorney and his office based on an actual conflict of interest, and appointed as special prosecutor the former prosecutor who negotiated the plea agreement with defendant. Because he was disqualified, the newly elected District Attorney had no authority to [*5]make a sentencing recommendation, and any of his prior statements regarding his views on the negotiated sentence were not binding on the special prosecutor or a proper consideration for the sentencing court.FN4

Third, once the special prosecutor appeared in the case, and after the court acknowledged that a sentence of shock probation would address defendant's mental health needs, the special prosecutor stated that he would accept that alternative sentence.FN5 In attempting to frame the proceedings as "tainted" by the District Attorney's statements, the dissent minimizes the relevance of the special prosecutor's acceptance of a shock probation sentence and County Court's meaningful efforts to impose such sentence (see dissenting op at 13-14). Those circumstances matter and we do not ignore them. Indeed, the shock probation sentence accepted by the special prosecutor was the same sentence that defendant eventually argued should be imposed because it was the "lawful equivalent of the disposition which all [*6]parties agreed to."FN6 In other words, the only prosecutor authorized to address the court on sentencing recommended a lawful sentence that accorded with defendant's express wishes and our caselaw.FN7

IV.

In sum, as the record makes plain, the special prosecutor—and not the newly-elected and conflicted District Attorney or members of his office—was the only person lawfully authorized to address the court on sentencing in this case. Clothed with that authority, the special prosecutor informed the court that he would accept shock probation. That was not the probation sentence initially agreed to in exchange for defendant's plea, which was later determined to be illegal; however, shock probation was, as defendant acknowledged and advocated for, a legal equivalent that was also acceptable to defendant given that the court could not, and would not, impose the negotiated sentence.

Under these circumstances, we reject defendant's claim that the prosecution reneged on the plea agreement. The negotiated sentence was illegal, and the special prosecutor acted in accordance with our caselaw by indicating his acceptance of "another lawful sentence that comport[ed] with . . . defendant's legitimate expectations" (Collier, 22 NY3d at 434)—indeed, the same alternative sentence that defendant himself eventually requested. Defendant received the benefit of his bargained-for plea deal when the special prosecutor said he was "certainly fine with" shock probation. Defendant cannot complain that he was misled or unfairly induced to accept the plea when the negotiated sentence could not lawfully be imposed. Rather, he chose not to withdraw his plea, despite the several invitations by the court, even after the court made clear that it would impose incarceration as required by the statute and based on the severity of the crime and defendant's criminal history. On this record, vacatur is neither required nor warranted.

Accordingly, the order of the Appellate Division should be affirmed.

WILSON, Chief Judge (Dissenting):

The People promised Johnathon T. Flesch they would recommend a probation sentence in exchange for his guilty plea. Mr. Flesch upheld his end of the bargain. He pleaded guilty. At sentencing, the newly-elected District Attorney—who had worked for Mr. Flesch as part of his defense team on the very same matter—violated his predecessor's promise and requested that the court not impose the probation sentence. The majority acknowledges that the prosecution cannot renege on a promise made in exchange for a guilty plea. And yet here, where the People indisputably violated their sentencing promise, the majority concludes that Mr. Flesch is not entitled to resentencing by a different judge because he received the "benefit of his bargained-for plea deal." He bargained for probation and, instead, was sentenced to four years in prison followed by three years post-release supervision. The majority's conclusion is a clear misapplication of our caselaw and United States Supreme Court precedent and renders a fundamentally unjust result. Accordingly, I dissent.

I.

Following separate altercations, Mr. Flesch was charged in two multi-count indictments filed in September 2023. The first indictment charged Mr. Flesch with assault in the second degree (Penal Law § 120.05 [3]) and related charges arising from an incident at the Department of Social Services office in the Seneca County Office Building. Mr. Flesch—who believed his girlfriend had committed suicide—became agitated and upset when requesting a bus ticket to see his mother in Rochester. When officers attempted to restrain him, Mr. Flesch resisted and one of the officers partially tore his Achilles tendon. The second indictment charged Mr. Flesch with assault in the second degree (Penal Law § 120.05 [7]) following a physical altercation when he was confined in Seneca County Correctional Facility allegedly injuring a correctional officer.

Mr. Flesch was originally scheduled to be arraigned on September 20, 2023 but was erroneously not produced from the Auburn Correctional Mental Health Unit, where Mr. Flesch was being held and treated. Nevertheless, during the September hearing, defense counsel informed the court that Mr. Flesch's mental health background was "pretty significant" and that he might request the court determine Mr. Flesch's competency to stand trial pursuant to CPL § 730.30. The court then referenced a rumor that Mr. Flesch had been "living in the woods" prior to his arrest.

On October 4, 2023 Mr. Flesch was arraigned and pleaded not guilty to both indictments. On December 6, 2023, at the People's request, the court held a "long conference with both sides" off-the-record. When the parties came back on the record, the court asked whether they had come to an agreement. Seneca County Assistant District Attorney David Mashewske reported that:

"The People are seeking a plea to count one; assault in the second degree, a Class D felony in satisfaction. Upon said plea, we will recommend a sentence of five years probation to include screening for and participation in the Monroe County Mental Health Court if recommend [sic] and ordered. There would be a State surcharge, DNA fee and the People are seeking a stay away Order of Protection in favor of [the victims]."

Mr. Flesch's defense counsel, Assistant Public Defender John Carey, confirmed that ADA Mashewske's representation was "the full detail" of what was discussed in chambers and that Mr. Flesch was prepared to proceed "with the addition of the Mental Health Court recommendation." The court agreed to "go along with that recommendation" and Mr. Flesch pleaded guilty to one count of second-degree assault in satisfaction of all counts in [*7]both indictments FN1. The court informed Mr. Flesch that if he failed to comply with its pre-sentencing conditions, it would "not be bound by [its] sentence commitment." The court adjourned.

On February 14, 2024, the parties appeared for sentencing. The People were represented by newly-elected District Attorney John Nabinger who stated that he had "some real concerns" about the plea agreement. DA Nabinger noted that both victims were "extremely dissatisfied" with the plea agreement. He also shared his concern that Mr. Flesch was not a Monroe County resident and could not be required to participate in Monroe County Mental Health Court. DA Nabinger then confirmed he was asking the court not to go forward with the probation sentence.

Mr. Carey, not "anticipat[ing]" the hearing "would be anything more than a formality," argued that Mr. Flesch should be sentenced in accordance with the "agreement in place"; Mr. Flesch agreed to plead guilty "with the understanding that he would receive a straight probation sentence." Mr. Carey represented that Mr. Flesch, upon his release, would reside with his mother in Monroe County and that during the December 2023 conference, "nobody in that discussion believed we were actually sentencing him to Mental Health Court at the time. It was a recommendation."

Although the court had originally allowed Mr. Flesch to plead guilty "because all three parties" agreed, because the DA now opposed the deal, the court provided Mr. Flesch an opportunity to withdraw his plea before remanding him. It is undisputed that Mr. Flesch did not violate any of the court's plea conditions between plea and sentencing.

Mr. Flesch then orally moved to disqualify DA Nabinger because he represented Mr. Flesch in this very case during his immediately prior position as an Assistant Public Defender. Mr. Carey stated that, in DA Nabinger's previous capacity as public defender, he "had discussions about the case with him" and that there was "damage done" because DA Nabinger "came in today and said were we [sic] not going to stick to the original plea deal, which has been in place for some time." The court adjourned.

Before the next appearance, the court granted Mr. Flesch's oral disqualification motion based on the conflict of interest and appointed as special prosecutor former ADA Mashewske, the same prosecutor who had negotiated the original plea deal.

On March 27, 2024, the next hearing date, the court updated Mr. Mashewske on what had transpired since December 2023. The court—explicitly referencing Mr. Nabinger's statements from his February 14 appearance—expressed concern that it could not sentence a defendant to Mental Health Court in another county and advised the parties to consult directly with the Monroe County treatment courts for clarification. The court proceeded to outline other sentencing options, emphasizing that the now-disqualified "Mr. Nabinger opposed probation;" the pre-sentence investigation report recommended shock probation; and the Seneca County Sheriff's Office recommended straight incarceration.

In response, Mr. Mashewske corroborated Mr. Carey's statement that the parties—during the December 2023 conference—had discussed that the court could not order Mr. Flesch to Monroe County Mental Health Court and that the court would, instead, "make a recommendation in the probation terms at sentencing." Mr. Mashewske noted that the People had an interest in resolving the case by plea. Nevertheless, Mr. Mashewske stated that he would be "certainly fine" with the court imposing shock probation.

In response, Mr. Carey agreed with Mr. Mashewske's representation that at the December 2023 conference at which Mr. Flesch pleaded guilty, mental health court was "not really an intrinsic or necessary part of the deal." The court interrupted Mr. Carey to—incorrectly—assert that one "cannot force the plea to go forward if one party does not want to go forward. That's the law in New York State." When Mr. Carey shared his belief that Mr. Mashewske was ready to move forward with their previous agreement, the court then stated—for the first time— that it was "not in favor" of "[s]traight probation with no guarantees of mental health treatment" and would only "go along" with a probation sentence with assurance of Mr. Flesch's participation in mental health treatment court. Before adjourning, the court stated it would reach out to the Director of Monroe County Mental Health Court and requested Mr. Carey do the same. When Mr. Carey asked the court what it planned to do in the event Mr. Flesch was ineligible for, or could not be sentenced to, mental health court, the court indicated that the parties would "have to look to alternatives and [*8]maybe it will be probation with the condition for an evaluation" and noted that, if it were to sentence Mr. Flesch to shock probation, he had already served the incarceration component in pretrial detention. The court adjourned.

Later that day, the court emailed the parties to inform them that it had incorrectly stated that the court could not go forward with the original plea because the People changed their position:

"Mr. Nabinger (as well as defense counsel) did not have authority to prevent the sentence promise from occurring. The Court, however, can refuse to go along with the sentence promise, as long as it gives the defendant an opportunity to withdraw his guilty plea . . . Regardless, as I said in court today, I am not going to impose a straight probation sentence. Defendant may move to withdraw his guilty plea."

Two days later, on March 29, the court emailed the parties again, this time listing nine reasons why it would "not impose any type of probation sentence." As relevant here, the court determined a sentence of probation—with or without treatment court—would be an illegal sentence on a conviction for assault in the second degree. In addition, after consulting with the Monroe County Mental Health Treatment Court, the court learned that, before the court can impose treatment court as a probation term at sentencing, a defendant must be first screened and accepted by said treatment court. In any event, Mr. Flesch, who was charged with assaulting peace officers, would be ineligible for treatment court in Monroe County. The court further reasoned that a probation sentence was not appropriate given the nature of the crime, the victim impact statements, and Mr. Flesch's prior criminal history. Advising Mr. Flesch that it was inclined to impose a determinate sentence of 5 years of incarceration, the court again offered Mr. Flesch the opportunity to withdraw his plea.

In response, Mr. Flesch submitted a letter requesting the court impose a shock probation sentence. Citing People v Collier (22 NY3d 429, 433 [2013]), Mr. Flesch argued that shock probation, a legal sentence for assault in the second degree, comported with Mr. Flesch's legitimate expectations, because Mr. Flesch already served seven months in presentence custody, and could, therefore, be immediately released on probation.

The parties appeared again on April 10, 2024 for sentencing. Reiterating it would not sentence Mr. Flesch in accordance with the parties' December 2023 plea agreement, the court informed Mr. Flesch it would allow him to withdraw his guilty plea. Mr. Flesch declined to withdraw his plea. Mr. Carey then moved the court to recuse itself on the ground that the prosecution prejudiced the proceedings when it reneged on its sentencing promise. Stating that its decision not to impose a straight probation sentence was rendered after Mr. Mashewske's appointment, and for reasons independent of DA Nabinger's statements, the court denied the recusal motion. When provided the opportunity to be heard on sentencing, Mr. Mashewske stated he would "certainly not object to State incarceration of five years or whatever the court deems appropriate." The court sentenced Mr. Flesch to a four-year determinate sentence, followed by three years' post-release supervision. The Appellate Division affirmed the judgment (236 AD3d 1469, 1469 [4th Dept 2025]).

II.

A.

The plea bargaining process "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances" (Santobello v New York, 404 US 257, 262 [1971]). Accordingly, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled" (id.). The People violate a sentencing promise "not only by the recommendation of a specific sentence but also by the implicit conveyance of the People's position as to the appropriate punishment" (People v Tindle, 61 NY2d 752, 754 [1984]).

"A guilty plea induced by an unfulfilled promise either must be vacated or the promise honored" (Collier, 22 NY3d at 433, quoting People v Selikoff, 35 NY2d 227, 241 [1974], cert denied 419 US 1122 [1975], citing Santobello, 404 US at 260). Where the promise cannot be honored, because the sentence is illegal, for instance, performance "does not foreclose 'technical divergence from the precise terms of the plea agreement' so long as the defendant's reasonable expectations are met" (Collier, 22 NY3d at 433-434, quoting Paradiso v United States, 689 F2d 28, 31 [2d Cir 1982]). The purpose of the remedy is to ensure the defendant—despite the prosecution's breach— "receive[s] the benefit of his bargain" (Tindle, 61 NY2d at 754).

In fashioning the appropriate remedy, "[w]e need not consider whether the breach of promise had an actual impact on the length of the sentence imposed by the trial court, for such consideration is not relevant" (Tindle, 61 NY2d at 754, citing Santobello, 404 US at 262-263). Even if the court insists that it was not influenced by the [*9]prosecution's breach, "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty" entitle the defendant to relief (Santobello, 404 US at 262-263). After all, "the fault [] rests on the prosecutor, not on the sentencing judge" (id.).

B.

When DA Nabinger appeared for sentencing on February 14, he unequivocally breached his duty to honor the sentencing promise his office made to Mr. Flesch in exchange for his guilty plea. The prosecution promised Mr. Flesch that it would recommend a sentence of five years of probation and "screening for and participation in the Monroe County Mental Health Court if recommend[ed] and ordered." Instead, DA Nabinger, who was not involved in the initial plea negotiations, expressed "real concerns" that a probation sentence would not be appropriate before explicitly requesting the court not impose the agreed-upon sentence. DA Nabinger's statements are precisely of the type that entitle a defendant to relief (see e.g. Tindle, 61 NY2d at 753 [ordering resentencing by a different judge where the prosecution promised not to take any position as to defendant's sentence but, instead, reminded the court of the "very very serious" nature of the case and the fact defendant took flight after he committed the crimes for which he was being sentenced]; Santobello, 404 US at 259 [vacating a judgment of conviction where the prosecution agreed not to make a recommendation as to the sentence, but then a new prosecutor recommended the maximum one-year sentence]).

The majority does not appear to challenge the premise that DA Nabinger breached the prosecution's original sentencing promise. Instead, the majority concludes that the breach does not raise the same "concerns that informed" other cases warranting vacatur and resentencing by a different judge (majority op at 9). I disagree.

First, the majority correctly notes that the agreed-upon sentence was illegal (majority op at 9). I also agree the prosecution "could not knowingly recommend an illegal sentence, even if previously agreed to by the parties" (id.). Nor did the court have the authority to impose an illegal sentence (id.). However, the prosecution's breach was unrelated to the illegality of the sentence. DA Nabinger asked the court not to impose a probation sentence—not because the probation sentence was illegal—but because the victims strongly opposed probation, and a general concern that the court could not order Mr. Flesch to participate in treatment court in Monroe County FN2. Put simply, because, at the time of the breach, DA Nabinger did not know the sentence was illegal and never expressed that to the court, he was still bound by his office's promise to Mr. Flesch. There is no principled reason to nullify the impact of the prosecution's breach, which rested in large part on the perceived unfairness of the sentence—and accordingly curtail the remedies available to Mr. Flesch—because of the court's subsequent realization that the original plea agreement was illegal.

To illustrate the point, consider what remedy Mr. Flesch would have been entitled to had the prosecution not breached its promise and the sentencing court imposed the illegal probation sentence. Assuming one of the parties discovered the illegality of the sentence, and then successfully challenged the illegal sentence on appeal, the appellate court would be required to vacate the judgment and remit to the trial court for resentencing (see People v Sparber, 10 NY3d 457, 469-472 [2008]). Because the illegal sentence was imposed pursuant to a plea agreement, the resentencing court could impose only a lawful sentence "that comports with the defendant's legitimate expectations" (Collier, 22 NY3d at 434). Had the illegal sentence been discovered on appeal, because Mr. Flesch pleaded guilty in exchange for probation, a court could not have resentenced Mr. Flesch to four years' incarceration and three years of post-release supervision as comporting with his legitimate expectations. Yet here, where the prosecutor breached his obligation and told the court not to proceed with the agreed-upon sentence without a hint that the sentence was illegal, the majority concludes that Mr. Flesch is not entitled to resentencing by a judge not tainted by the prosecution's breach of its sentencing promise.

Second, the majority attempts to minimize the impact of DA Nabinger's statements on the basis that, because he was eventually disqualified by the court, "any of his prior statements regarding his views on the negotiated sentence were not binding on the special prosecutor or a proper consideration for the sentencing court" (majority op [*10]at 10). As a threshold matter, and as the majority cursorily discusses in a footnote (see id. at n 4), whether the sentencing court was ultimately influenced by the breaching statements is irrelevant to the analysis (Tindle, 61 NY2d at 754, citing Santobello, 404 US at 262-263 ["We need not consider whether the breach of promise had an actual impact on the length of the sentence imposed by the trial court, for such consideration is not relevant."]). The majority disregards this rule by concluding that "in Tindle, Torres, and Santobello, it was not evident that the sentencing court's decision was untainted by the prosecutor's comments" (id.). But in Santobello the sentencing court explicitly stated that "the prosecutor's recommendation did not influence him" and the U.S. Supreme Court found "no reason to doubt" the court's assurance (404 US 257 at 262-263). Accordingly, the defendant was entitled to relief irrespective of whether the court acted on the prosecutor's violative statements. This rule makes sense. Once the prosecution has violated its promise, it would be a futile—if not, an impossible—exercise to disentangle the prosecutor's statements from the court's ultimate sentencing decision. FN3

Even taking the majority's approach and considering the impact of the prosecution's breach, the record here compels the conclusion that the proceedings were undoubtedly tainted by DA Nabinger's statements, entitling Mr. Flesch to resentencing by a different judge. The court, despite the fact it had disqualified DA Nabinger and replaced him with special prosecutor Mashewske, referenced DA Nabinger's breaching statements twice during the subsequent March 27 hearing. The first time, the court expressed that it shared DA Nabinger's concern it could not sentence defendant to treatment court in another county. In fact, at this juncture, this concern was the primary obstacle preventing the court from imposing a straight probation sentence; the court would agree to straight probation with assurance Mr. Flesch would participate in mental health treatment court. Notably, this was not a concern of the court's in December 2023, when it allowed Mr. Flesch to plead guilty, nor was it a concern to the parties who negotiated the plea deal who later confirmed the agreement was not contingent on Mr. Flesch's participation in treatment court. Although it is of course possible that the court may have eventually developed the same concern from some source other than the prosecutor's breach of its sentencing promise, we have no way of knowing; DA Nabinger's statements inextricably shaped the proceedings.

The second time, when enumerating sentencing options, the court explicitly stated that "Mr. Nabinger opposed probation after having talked to one or both victims in this case." Despite having had access to the same victim impact statements before the original February sentencing date, the court was prepared to sentence Mr. Flesch to probation but-for DA Nabinger's statements (and the court's erroneous belief the prosecutor could unilaterally renege a plea agreement). And, when the court eventually enumerated the reasons a probation sentence was inappropriate, it included the fact that one of the victims "strongly recommended incarceration." It is not possible to conclude that the court's belated consideration of the victim's recommendation was uninfluenced by the prosecutor's identical concern.

The court's continued references to DA Nabinger's position on the inadequacy of the plea agreement are even more alarming given the circumstances surrounding his office's disqualification: before being elected DA, Mr. Nabinger worked for Mr. Flesch on the very same charges at issue in this case as an Assistant Public Defender. Not only was the expression of DA Nabinger's initial view wholly improper given the conflict, but the court's subsequent references to his statements—even after his disqualification—create the additional concern that the court may have given outsized weight to Mr. Nabinger's rejection of the plea promise because Mr. Nabinger knew facts about Mr. Flesch from that representation. As the majority says, this case abounds with "unique circumstances," but those circumstances cut sharply in favor of purging any hint of impropriety by granting Mr. Flesch the very modest, legally required remedy he seeks—just have some other judge sentence him. That's it.

Finally, the majority relies on the fact that, during the March 27 appearance, special prosecutor Mashewske said he was "fine" with shock probation, which is "a lawful sentence that accorded with defendant's express wishes" (majority op at 12). Without explicitly saying so, the majority seems to suggest that any prejudice caused by DA [*11]Nabinger's statements was cured by special prosecutor Mashewske's willingness to accept a shock probation sentence. But Mr. Mashewske's statement was itself yet another violation of the plea agreement. At the time Mr. Mashewske indicated he would be fine with shock probation—assuming, as the majority does, that Mr. Mashewske was not bound by DA Nabinger's wholesale rejection of the agreement—he still had an obligation to recommend a probation sentence. The majority does not suggest otherwise. Accordingly, by agreeing to accept a sentence other than the one the parties agreed to, the prosecution violated its promise to recommend probation.FN4

By the next hearing date on April 10, the court had informed the parties that it intended to impose a term of incarceration because, among other reasons, the negotiated probation sentence—with or without treatment court—would be illegal and that, in any event, Mr. Flesch would not be eligible for treatment court. When provided the opportunity to be heard on sentencing, Mr. Mashewske stated he would "certainly not object to State incarceration of five years or whatever the court deems appropriate." His statements were, yet again, a violation of the prosecution's sentencing agreement. At that point, Mr. Mashewske could not have knowingly advocated for the illegal probation sentence. But he certainly could have—and should have—recommended shock probation as a lawful alternative that would have comported with Mr. Flesch's reasonable expectations, especially because he agreed that mental health treatment was not part of the agreed-upon sentence, but rather a recommendation. That the court indicated its intent to impose incarceration does not relieve the prosecution from honoring the promise it made to Mr. Flesch to induce his guilty plea.

Permitting Mr. Flesch to withdraw his plea is not sufficient to give him the benefit of his bargain. To the contrary: had Mr. Flesch withdrawn his plea, he would have lost the bargain entirely. The law does not grant the People the right to breach their sentencing promise and then be put back into the position they were in had they not breached; it grants the defendant of the benefit of the bargain, or as close to it as is legally permissible. Here, resentencing before a different judge is the appropriate remedy to safeguard the integrity of the plea bargaining process and "insure [Mr. Flesch] what is reasonably due in the circumstances" (Santobello, 404 US at 262).

III.

Mr. Flesch's case also exposes some of the remaining weaknesses in our court system — ones that we are working to address but have not yet resolved. Mr. Flesch is diagnosed with several serious mental health disorders. From 2016 to 2023, Mr. Flesch resided in an in-patient mental health treatment facility. During that time, Mr. Flesch maintained periods of employment. According to Mr. Flesch, he was kicked out of the residential facility due to his "problematic behaviors," which left him homeless.

The parties, including the court, agreed Mr. Flesch would benefit from mental health treatment. Even after the prosecution violated the plea agreement, the court indicated a willingness to sentence Mr. Flesch to probation so long as it could be assured Mr. Flesch would participate in treatment court, by consulting with the mental health treatment court in neighboring Monroe County to see if Mr. Flesch could be accepted there. Put simply, the court determined that the charges at issue here—arising from relatively minor physical altercations with peace officers possibly fueled by Mr. Flesch's mental illness—did not require incarceration so long as Mr. Flesch received treatment. Its decision to sentence Mr. Flesch to four years in prison was, in part, because appropriate treatment was not available to Mr. Flesch: Seneca County does not have a mental health treatment court, and Mr. Flesch was not eligible for treatment court in Monroe County—where he planned to live with his mother—because he was "charged with assaulting peace officers on two separate occasions and having violent tendencies."

Unfortunately, Mr. Flesch's case is not unique. New York has a shortage of mental health resources and providers—a problem that is particularly acute in low-income and rural communities FN5. As a result, "New York State [*12]incarcerates more people with serious mental illnesses in its jails and prisons than it treats in hospitals."FN6 The creation of treatment courts across the state is an important step in the right direction. Treatment courts work; individuals who participate in treatment courts in lieu of incarceration are significantly less likely to reoffend FN7. However, as Mr. Flesch's case makes clear, there are systemic obstacles to providing defendants treatment. For instance, limited funding and the scarcity of mental health providers restricts capacity, and strict eligibility requirements prevent in need defendants from accessing treatment.FN8

It is true that Mr. Flesch failed to comply with the law. But the criminal justice system has failed Mr. Flesch. Moving forward, it is up to the three branches of government to invest in access to mental health treatment for the benefit of all New Yorkers.

* * *

For the reasons set forth herein, I would modify the Appellate Division's order by vacating the sentence, and remit the case to Supreme Court for resentencing before a different judge.

Order affirmed. Opinion by Judge Rivera. Judges Garcia, Singas, Cannataro and Troutman concur. Chief Judge Wilson dissents in an opinion, in which Judge Halligan concurs.

Decided May 26, 2026

Footnotes

Footnote 1

Shock probation—an informal synonym for a split sentence—refers to a term of imprisonment combined with a term of probation or conditional discharge (Penal Law § 60.01 [2] [d] [defining a split sentence]). Here, because defendant had already been held in custody for seven months at the time he was sentenced, he argued to the court that his five-year probation sentence could include a definite sentence of up to six months' imprisonment under Penal Law § 60.01 (2) (d) (see id. ["In any case where the court imposes a sentence of imprisonment not in excess of . . . six months for a felony . . . , it may also impose a sentence of probation or conditional discharge provided that the term of probation or conditional discharge together with the term of imprisonment shall not exceed the term of probation or conditional discharge authorized by article sixty-five of this chapter. The sentence of imprisonment shall be a condition of and run concurrently with the sentence of probation or conditional discharge"]; see also Penal Law § 70.00 [4] ["When a person, other than a second or persistent felony offender, is sentenced for a class D or class E felony, and the court, having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that a sentence of imprisonment is necessary but that it would be unduly harsh to impose an indeterminate or determinate sentence, the court may impose a definite sentence of imprisonment and fix a term of one year or less"]).

Footnote 2

The court deviated from its earlier plan to impose a sentence of five years' imprisonment based on defense counsel's representation that one of the victims had initiated physical contact with defendant.

Footnote 3

As defendant acknowledges, if this Court were to order resentencing before a different judge, the new judge would not be limited to imposing a sentence of shock probation.

Footnote 4

While our caselaw instructs that we not consider whether the prosecution's comments actually influenced the sentencing court's ultimate decision to impose a harsher sentence than originally agreed upon, those cases involved lawful sentences, whereas here defendant faced an illegal sentence, which the court made clear it would not impose (see Tindle, 61 NY2d at 754; Torres, 67 NY2d at 661; see also Santobello, 404 US at 262-263). Moreover, in Tindle, Torres, and Santobello, it was not evident that the sentencing court's decision was untainted by the prosecutor's comments. By contrast, here, the record makes clear that the sentencing court was not acting on the District Attorney's recommendation. Indeed, at the next appearance, the court made clear that it would impose probation—contrary to the District Attorney's recommendation—if it was accompanied by a mental health treatment component, and then adjourned to determine whether such a program was available to defendant. Once the court realized that treatment court was not a viable option here, that the prosecution could not renege on the negotiated promise, and that, in any case, probation would be an illegal sentence and inappropriate given defendant's pending offenses, the court made clear throughout the various sentencing discussions that it would sentence defendant to a term of imprisonment. The court then informed defendant that he could withdraw his plea given that it could not impose the promised sentence. Defendant chose to retain the plea, fully aware of the consequences and, on these facts, cannot complain, because the court exercised its discretion to impose a sentence it deemed appropriate under the circumstances.

Footnote 5

The dissent assumes that at the March 27, 2024 proceeding, the special prosecutor and defendant were not yet aware that the agreed-to sentence was illegal, but the record is unclear on that score (see dissenting op at 15 n 4). Regardless, the court made crystal clear at this proceeding that it would not impose a probation sentence without some mental health component, that it was unsure whether it could order defendant to receive services through the Monroe County Mental Health Treatment Court, and that the Probation Department had recommended shock probation as an appropriate sentence. There is nothing untoward about the special prosecutor's support for a shock probation sentence.

Footnote 6

The dissent contends that the special prosecutor violated the prosecution's promise to recommend straight probation during the March 27, 2024 hearing when he accepted a sentence of shock probation, because he purportedly "had an obligation to recommend" a straight probation sentence (dissenting op at 15). Even if the special prosecutor were obligated to recommend straight probation—an illegal sentence—he satisfied this obligation by recommending shock probation, which was straight probation's functional equivalent in this case, as recognized by defendant and the special prosecutor. As implied in defendant's letter, if the court imposed shock probation on March 27, 2024 he would have been immediately released to probation because, by then, his presentence custody would have satisfied the incarceratory portion of the sentence.

Footnote 7

To the extent defendant relies on the special prosecutor's statement at sentencing on April 10, 2024 that he "certainly [was] not going to object to State incarceration of five years," that comment was made only after the court had already informed the parties that it would sentence defendant to an incarceratory term, both in its March 29th letter and at the beginning of the April 10th proceeding. Thus, the special prosecutor's comment did not violate the plea agreement, as the court had already rejected the negotiated sentence. Indeed, by criticizing the special prosecutor's April 10th statement as "abandon[ing] [the] promise to recommend probation supervision," defendant is essentially contending that the special prosecutor should have insisted on recommending an illegal sentence. That is contrary to doctrine "as a matter of law and strong public policy" (Hicks, 98 NY2d at 188).

Footnote 1

The pleaded offense carried a maximum sentence of seven years' imprisonment.

Footnote 2

DA Nabinger's concern that a court in Seneca County could not require Mr. Flesch to participate in treatment court in Monroe County has no bearing on the legality of the promised sentence. The parties that negotiated the original plea deal—Mr. Carey and former-ADA Mr. Mashewske—agreed in open court that the original plea deal was not contingent on Mr. Flesch's participation in treatment court.

Footnote 3

Although under Santobello a court's assertion that it was not influenced by a prosecutor's breach of a sentencing promise is legally irrelevant, here the court's decision not to sentence Mr. Flesch in accordance with the plea deal on February 14 was a direct result of the prosecution's breach. More specifically, the court stated it: "allowed [Mr. Flesch] to plead only because all three parties — that's what they wanted to do. Now, I'm hearing from the DA that's not what they want to do. So, I'm going to give Mr. Flesch an opportunity to withdraw his plea."

Footnote 4

The majority retroactively justifies Mr. Mashewske's breach by arguing that Mr. Flesch—upon learning a straight probation sentence would be illegal—eventually advocated for shock probation (majority op at 11-12). But at the point in the proceedings when Mr. Mashewske agreed to a shock probation sentence, the parties were not aware the probation sentence was illegal.

Footnote 5

Joshua Breslau, Dionne Barnes-Proby, Mallika Bhandarkar, Jonathan H. Cantor, Russell Hanson, Aaron Kofner, Rosemary Li, Nipher Malika, Alexandra Mendoza-Graf & Harold Alan Pincus, Availability and Accessibility of Mental Health Services in New York City, Rand Health Quarterly (2022); National Alliance on Mental Illness of New York City, Mental Health & Drug Treatment Courts in New York State: Assessment and the Case for Expansion at 6 (June 2023); New York State Bar Association, Mem in Support of S.4547/A.4869 (Treatment Court Expansion Act) at 1 (2026).

Footnote 6

Lauren Jones, Sandra van den Heuvel & Amanda Lawson, The Cost of Incarceration: How New York Can Reduce Jail Spending and Invest in Communities at 8 (Vera Inst of Just 2021), https://vera-institute.files.svdcdn.com/production/downloads/publications/the-cost-of-incarceration-in-new-york-state.pdf.

Footnote 7

See Caroline I. Jalain, Paul A. Lucas & George E. Higgins, Assessing the Effectiveness of Mental Health Courts in Reducing Recidivism: A Systematic Review with Meta-analysis, 7 Just Evaluation J 212 (2024); Virginia Aldigé Hiday, Bradley Ray & Heathcote Wales, Longer-Term Impacts of Mental Health Courts: Recidivism Two Years After Exit, 67 Psychiatric Services 378 (2016).

Footnote 8

National Alliance on Mental Illness of New York City, Inc., Mental Health and Drug Treatment Courts in New York State: Assessment and the Case for Expansion at 6-8 (June 2023); see Eliza Fawcett, Lawmakers,Top Judges Push to Expand Mental Health Courts, New York Focus (Oct 17, 2025), https://nysfocus.com/2025/10/17/mental-health-court-diversion-program-new-york.